UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HORIZON LINES, LLC, f/k/a
CSX LINES, LLC,

                         Petitioner,

                                            08 Civ. 3982 (JSR)
       -against-

                                            CIVIL ACTION
A.P. Moller, Managing Owner of
MAERSK-SEALAND, INC.,

                         Respondent.

------------------------------------------------------------X

## HORIZON LINE'S MEMORANDUM OF LAW
## <u>TO VACATE UNLAWFUL ARBITRATION AWARD</u>

DᴇORCHIS & PARTNERS, LLP
Attorneys for Petitioner, Horizon Lines, LLC
61 Broadway, 26th Floor
New York, NY  10006-2802
(212) 344-4700

Vincent M. DeOrchis
M.E. De Orchis
John A. Orzel
Justin Waytowich
 *-of Counsel-*

Table of Contents

Page

Table of Authorities ........................................................................................................... ii

HORIZON LINE'S MEMORANDUM OF LAW TO
VACATE UNLAWFUL ARBITRATION AWARD.................................................................1

INTRODUCTION AND UNDISPUTED FACTS ...................................................................1

POINT I.
THE STANDARD FOR VACATING A  MARITIME ARBITRATION AWARD ..................6

POINT II.
THE MAJORITY WAS AWARE OF THE
GOVERNING  PRINCIPLE THAT COGSA
DOES NOT APPLY  TO THE PRIVATE
CONTRACTS OF CARRIAGE ...................................................................................8

POINT III.
THE CLEAR WORDING OF THE SPACE  CHARTER ONLY
PROVIDED FOR A  PARTIAL INCORPORATION OF COGSA ...........................................8

POINT IV.
FIRST ELEMENT OF MANIFEST DISREGARD:
THE LEGAL PRINCIPLE OF PARTIAL INCORPORATION
OF COGSA WAS WELL  DEFINED TO
THE PANEL AND CLEARLY APPLICABLE........................................................................10

POINT V.
SECOND ELEMENT OF MANIFEST DISREGARD:
THE PANEL IMPROPERLY APPLIED THE LAW ..............................................................15

POINT VI.
THIRD ELEMENT OF MANIFEST DISREGARD:
THE MAJORITY IGNORED THE LAW OF PARTIAL INCORPORATION .......................20

CONCLUSION....................................................................................................................25

# Table of Authorities

## Cases

Page No.

*Abondolo v. H&M S. Meat Corp,*
No. 07 Civ. 3870, 2008 U.S. Dist. Lexis 38726 at *4-*5 (S.D.N.Y. May 12, 2008) ................. 8

*Associated Metals & Minerals Corp. v. M/V Arktis Sky,*
978 F.2d 47 (2d Cir. 1992) ................................................................................................. 17,23

*Associated Metals & Minerals v. S/S JASMINE,*
983 F.2d 410 (2d Cir. 1993) ............................................................................... 13,14,17,20,24

*DiRussa v. Dean Witter Reynolds, Inc.,*
121 F. 3d 818 (2d. Cir. 1997) ...................................................................................................... 7

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,*
333 F.3d 383 (2d Cir. 2003) .......................................................................................... 6,7, 21

*Edward Weil, Inc. v. American West African Line, Inc.,*
147 F.2d 363 (2d Cir. 1945) ..................................................................................................... 19

*Goldman v. Architectural Iron Co.,*
306 F. 3d 1214 (2d. Cir. 2002) ................................................................................................... 6

*Great Am. Ins. Co., v M/V Handy Laker,*
2002 U.S. Dist. LEXIS 27378, No. 97 Civ. 7400, at *13 (S.D.N.Y. Dec. 19, 2002) ....... 17,23

*Hall Street Associates, LLC v. Mattel, Inc.,*
128 S. Ct. 1396 (Mar. 25, 2008) ............................................................................................ 7,8

*Halligan v. Piper Jaffray, Inc.,*
148 F. 3d 197, 202 (2d. Cir. 1998) ............................................................................................. 7

*In re Marine Sulphur Queen,*
460 F. 2d 89, 103 (2d Cir. 1972) ................................................................................. 14,15,17,23

*In the matter of Sociedade Portugueas de Navios Tanquest, Ltd.,*
SMA No. 1815 (1983) .............................................................................................................. 22

*In the matter of Petroleo Brasileiro S.A.,*
SMA No. 3051 (1994) .............................................................................................................. 22

*Larsen v. A.C. Carpenter,*
620 F. Supp. 1084, 1106-07, (E.D.N.Y. 1985), *aff'd,* 800 F. 2d 1128 (2d Cir. 1986) ....... 12, 13

Table of Authorities
(continued)

Page No.

*Lekas & Drivas, Inc. v. Goulandris,*
   306 F.2d 426, 429 (2d Cir. 1962)........................................................................... 19

*M/V La Libertad,*
   529 F. Supp 78, 82  (S.D.N.Y. 1981)..................................................................... 22

*Nichimen Co. v. M.V. Farland,*
   462 F.2d 319, 327-28 (2d. Cir. 1972) .......................................................... 8,18,19

*Pannell v. United States Lines,*
   263 F.2d 497, 498 (2d Cir. 1959), *cert. denied*, 359 U.S. 1013 (1959) .................... 15

*Parnell v. Tremont Capital Mgmt. Corp.,*
   No. 07-0752-CV, U.S. App. LEXIS 11619, at *2-*4 (2d Cir. May 10, 2008)......................... 8

*Possehl, Inc., v. Shanghai Hia Xing Shipping,*
   No. 00 Civ. 5757, 2001 U.S. Dist. LEXIS 2169 at *9 (S.D.N.Y. Mar. 7, 2001)...................... 7

*Stemcore USA, Inc. v. M/V ARCHIMEDES,*
   No. 02 Civ. 7864, 2004 U.S. Dist. Lexis, 25236 at *7 (S.D.N.Y. May 4, 2004) .......... 15,17,23

*The Edwin I. Morrison,*
   153 U.S. 199, 211, 14 S. Ct. 823, 38 L. Ed. 688 (1894)......................................... 19

*The JoAnne,*
   SMA 3026 (Nov. 5, 1993) ................................................................................... 21

*The Rodosto,*
   SMA 2222 (Mar. 17, 1986).................................................................................. 21

*Wilko v. Swan,*
   346 U.S. 427, 436-37 (1953) .............................................................................. 6

ii

Table of Authorities
(continued)

Page No.

**Statutes**

COGSA, 46 U.S.C. § 1300-1315 ............................................................................. 10,12

COGSA, 46 U.S.C. § 1302 .................................................................................... 9,10

COGSA, 46 U.S.C. § 1305 ...................................................................................... 8

Federal Arbitration Act (FAA), 9 U.S.C. Sec. 10(a) ................................................ 6,20

**Other Authorities**

2A BENEDICT ON ADMIRALTY, Sec. 22 at 3-2,3 (M. Cohen, 7th ed. 1985) .................................. 13

*Time Charters* (4th ed. 1995) ............................................................................ 24

THE LAW OF ADMIRALTY, by Gilmore & Black, (2d ed. 1975) .................................................. 11

2 THOMAS J. SCHOENBAUM, ADMIRALTY AND TRANSPORTATION LAW, (3d ed. 2001) ............... 12

*Voyage Charters* (3rd ed. 2007) ........................................................................ 17,23,24

## INTRODUCTION AND UNDISPUTED FACTS

Petitioner, Horizon Lines, LLC., moves this Court for an Order vacating the arbitration award issued on January 30, 2008, by a panel of three arbitrators, under the Rules of the Society of Maritime Arbitrators.  Horizon Lines is the successor of the named party in the arbitration proceeding, CSX Lines, LLC.  For simplicity and to follow with the terminology used in the Award, Horizon Lines will be referred to herein as "CSX."

The arbitration in question arose out of a Space Charter signed on December 9, 1999, between two ocean carriers, CSX Lines, LLC ("CSX") of North Carolina and A.P. Moller, as managing owner of Maersk Sealand ("Maersk"), of Copenhagen, Denmark. (Exh. 1). [1]  In 1999, Maersk purchased the international operation and assets of Sea-Land Service, Inc., which was the largest U.S. flagged ocean carrier at the time.  CSX was organized to continue the US based operations of Sea-Land.  CSX retained ownership of the US flagged Sea-Land vessels, which it continues to operate.  As CSX had excess capacity, it agreed, through the Space Charter, to carry Maersk containers on board the CSX vessels.  CSX retained the operational control of the vessels and continued to man the vessels, but Maersk had the ability to load its containers on the vessels and to issue bills of lading to its customers, as if it was using its own vessels.  This is a very common arrangement in the international container trade.  (Exh. 6, pp. 660-666).

As the contract states, "Maersk desired to charter space aboard certain CSX vessels and purchase transportation for carriage of cargo transported by Maersk under its bills of lading as an ocean common carrier in the United States foreign commerce…" (Exh. 1, p. 2).  Maersk chartered space on CSX vessels for a period of five years, sufficient to carry the equivalent of up to 910 containers on each vessel, from Maersk's Pacific terminals at Kwai Chung, Hong Kong,

---

[1]    The Exhibit number refers to the number assigned to each exhibit in Petitioner's Verified Application to Vacate Arbitral Award dated April 28, 2008.  Petitioner relies upon the Verified Application to Vacate as a substitute for an Affidavit of Facts.

and Kaohsiung to Maersk's terminals at U.S. West Coast ports on a weekly service. (Exh. 6, p. 689).   The charter hire was only $486.20 per container unit for each Pacific crossing. (Exh. 6, p. 677).

John V. Keenan, who had been employed by Sea-Land, a U.S. carrier, before it was purchased by Maersk in 1999, became an officer of CSX Lines. Mr. Keenan signed the contract on behalf of CSX. His initials appear at the bottom of each page of the Space Charter. (Exh. 1; 6, pp. 656-659).

Mr. Keenan testified that the freight CSX charged, $486.20 per container unit, was a very favorable rate for Maersk, a kind of "wholesale price." (Exh. 6, p. 677). Maersk was able to negotiate that rate because the CSX vessels would call at Maersk's terminals where Maersk's own stevedores would do the loading and unloading at Maersk's direction and expense. (Exh. 6, p. 677). Maersk also operated the terminals at Tacoma. (Exh. 6, p. 683). Maersk issued its own bills of lading, which neither the Master of the vessels nor CSX ever saw, and in fact CSX was prohibited under the contract from competing in the same service as Maersk. (Exh. 6, p. 682).

In simple terms, Maersk was the common carrier moving the shipments in foreign trade, and issuing bills of lading to its customers as required by U.S. COGSA, 46 U.S.C. §1300 *et. seq.* (1936) ("COGSA"). The Space Charter was neither a bill of lading nor a document of title. It was a private contract between an ocean carrier, Maersk, and a shipowner, CSX Lines, and Maersk was renting space on CSX vessels to have its containers carried to destination on CSX vessels.

As a private contract between two experienced ocean carriers, the parties were free to apportion responsibility for the care and carriage of the Maersk containers. Clause 7.1 deals with the issue of responsibility. Mr. Keenan of CSX explained Clause 7.1 of the Space Charter as follows:

2

Q.    Let's look at Clause 7.1 on page 10.  That clause begins "The carriage, custody and care of the goods hereunder shall be subject to the Hague Rules…" and COGSA.  Who is going to do the carriage?

A.    We were going to do the carriage.

Q.    Who was going to do the loading and securing of containers at Kaohsiung?

A.    That was the terminal operator.  That was Maersk, APMT.

Q.    Is that also true of Kobe?

A.    Yes, that is.

Exh. 6, pp. 682-83.

That explains why the Space Charter, Clause 7.1, makes only "carriage, custody and care of goods" subject to COGSA, because, as Mr. Keenan testified, CSX was only to carry the containers on its vessels.  The loading, stowing and securing of Maersk containers was covered by other contracts between Maersk, and Maersk's terminal and stevedores, at the loadports.

Mr. Keenan, who said he had no legal background (Exh. 6, p. 701), testified that the contract had been drafted by lawyers, "but I can tell you clearly we were not the stevedore in this document…It's clear we did not operate the terminals…. Maersk paid for the loading and the stowage…."  (Exh. 6, p. 702-703).

Mr. Keenan also confirmed how the industry understands the different obligations of ships' officers and of stevedores.

Q.    As between the Chief Officer, which you said is the man in charge of cargo for the ship, and the stevedore, do you have an opinion as to who is the expert?

A.    I think there are two groups of experts.  The expert who is knowledgeable of the cargo that is in the facility that needs to get loaded to the ship is the stevedore.  The expert who is familiar with the stability and the GM of the vessel is the Chief Mate.

3

Exh. 6, pp. 709-710.

Mr. Keenan testified that many people, including lawyers, were involved in negotiating the Space Charter, and that on Maersk's side, the negotiators were principally Peder Sondergaard and Vagn Lend Moller.  (Exh. 6, pp. 659, 670, 671, 697).  Although these Maersk witnesses were available, neither was called to testify or give a sworn declaration to contradict any of Mr. Keenan's testimony.  The Maersk lawyers who were involved in drafting the Space Charter were never called. (Exh. 6, pp. 669-670).

Despite the fact that the Space Charter only imposes the obligations of "carriage, custody and care' of the cargo, a "majority" of two arbitrators, both of whom have legal educations, concluded that the Space Charter incorporated all of COGSA:

> "incorporates **all** of the terms and conditions of COGSA (The U.S. Carriage of Goods by Sea Act, 46 U.S,C. 1300, et Seq., (1936) including its burdens of proof and CSX's non delegable duty of proper stowage." (emphasis supplied)

Exh. 2, p. 8.

CSX respectfully submits that this holding, which is the lynchpin of the entire Arbitration Award, is in manifest disregard of the law.  It has long been recognized by the Second Circuit that COGSA, by its own terms, does *not* apply as a matter of law to charter parties, and, although parties to a charterparty may incorporate COGSA as a term of the private contract, the parties have freedom of contract to incorporate only those portions or sections of COGSA they choose; consequently, the parties are free to allocate as they wish the responsibility for loading and stowage of containers aboard vessels.

CSX believes and contends that the majority of the Panel manifestly disregarded the applicable law, engaged in misconduct, and overreached its powers by disregarding the undisputed testimony of Mr. Keenan; in holding that CSX was responsible for the loading and

4

stowage of the Maersk containers; and that the burdens of proof under COGSA were applicable

to the Space Charter.

CSX Lines objects to the majority award, rendered by the panel, dated January 30, 2008

which states that:

> Article 7.1 of the Contract provides that "[T]he carriage, custody and care of the goods hereunder shall be subject to …COGSA". CSX's principal argument on the application of COGSA in its entirety to the losses in question is that the COGSA incorporation clause referred to is nothing more than a partial incorporation of COGSA. As Article 7.1 does not specifically mention "loading" or "stowage", CSX asserts the stowage obligation rests with Maersk.

> It is well established that COGSA and its burden of proof may be fully incorporated in a private contract of carriage (footnote omitted).   The majority concludes that ***Article 7.1 fully incorporates all of the terms and conditions of COGSA, including its burdens of proof and CSX's non-delegable duty of proper stowage***.  Section 1303 (2) provides:

>> The carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried.

> The Contract is concededly a private contract of carriage freely negotiated by the management and legal teams of two of the industry's leading and most knowledgeable owners and operators of container vessels. Parties to a private contract of carriage incorporating COGSA are, of course, free to modify the terms of COGSA, shifting the fundamental responsibilities of the statute as they wish. This would obviously include an agreement to delegate the risk and responsibility for loading of cargo in a manner that is different and inconsistent with the express provisions of COGSA. However, ***clear and explicit language would be required to do so*** (footnote omitted). (emphasis supplied)

Exh. 2, p. 8.

## POINT I.

## THE STANDARD FOR VACATING A
## MARITIME ARBITRATION AWARD

The Federal Arbitration Act (FAA), 9 U.S.C. Sec. 1, et. Seq., which defines federal

policy on arbitration proceedings, permits vacatur of an arbitration award in the following

circumstances:

> (1) where the award was procured by corruption, fraud, or undue
> means; (2) where there was evident partiality or corruption in the
> arbitrators, or either of them; (3) where the arbitrators were guilty
> of misconduct in refusing to postpone the hearing, upon sufficient
> cause shown, or in refusing to hear evidence pertinent and material
> to the controversy; or of any other misbehavior by which the rights
> of any party have been prejudiced; or (4) where the arbitrators
> exceeded their powers, or so imperfectly executed them that a
> mutual, final and definite award upon the subject matter submitted
> was not made.

9 U.S.C. Sec. 10 (a).

The Second Circuit has also recognized that in addition to the grounds afforded by

statute, vacatur is proper when the award exhibits a "manifest disregard of law". *See Duferco*

*Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 388-89 (2d Cir. 2003); *Goldman*

*v. Architectural Iron Co.,* 306 F. 3d 1214, 1216 (2d. Cir. 2002). The doctrine of "manifest

disregard" finds its origins in the Supreme Court's decision in *Wilko v. Swan,* 346 U.S. 427, 436-

37 (1953), and has permitted the Second Circuit to vacate an arbitral award if "manifest

disregard of the law is plainly evident from the arbitration record." *Duferco, supra,* at 388.

Consequently, a motion seeking *vacatur* under the doctrine of manifest disregard requires

three inquiries: (1) whether the law that was allegedly ignored was clear and in fact explicitly

applicable to the matter before the arbitrators; (2) whether the law was in fact improperly

applied, leading to an erroneous outcome; and (3) whether the arbitrators were aware of the

applicable law but intentionally disregarded it. *Duferco, supra,* at 389-390*; see also, Halligan v. Piper Jaffray, Inc.* 148 F. 3d 197, 202 (2d. Cir. 1998); *DiRussa v. Dean Witter Reynolds, Inc.,* 121 F. 3d 818, 821 (2d. Cir. 1997).

"A party seeking *vacatur* bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it," thus exceeding their powers. *Duferco,* 333 F. 3d, at 389; *Possehl, Inc., v. Shanghai Hia Xing Shipping,* No. 00 Civ. 5757, 2001 U.S. Dist. LEXIS 2169 at *9 (S.D.N.Y. Mar. 7, 2001).

Petitioner wishes to acknowledge the recent Supreme Court decision of *Hall Street Associates, LLC v. Mattel, Inc.,* 128 S. Ct. 1396 (Mar. 25, 2008). In *Hall Street*, the Supreme Court ruled that the grounds for vacating or modifying an arbitration award listed in FAA § 10 and § 11 are "exclusive" and may not be expanded by parties to a private contract. *Id.* at 1404-06.

The *Hall Street* court examined the "manifest disregard" standard, and found the concept ambiguous:

> Maybe the term "manifest disregard" was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them….Or, as some courts have thought, "manifest disregard" may have been shorthand for § 10(a)(3) or § 10 (a)(4), the subsections authorizing vacatur when the arbitrators were "guilty of misconduct" or "exceeded their powers."

(*Id.* at 1404 [citations omitted]).

Additionally, assuming arguendo that *Hall Street* does trump the manifest disregard standard, petitioner contends that the "manifest disregard of law" standard may be viewed as a

7

judicial interpretation of the FAA § 10 requirement under *Hall Street*, as opposed to a separate standard of review.

However, Petitioner believes that the *Hall Street* decision did not eliminate the Second Circuit "manifest disregard" standard. The *Hall Street* court stated that "the FAA is not the only way into court" and parties "may contemplate enforcement under…common law, for example, where judicial review of a different scope is arguable."
*Id.* at 1406.

Additionally, there have been at least two cases decided by Second Circuit courts after *Hall Street* which apply the manifest disregard standard. *See Abondolo v. H&M S. Meat Corp.*, No. 07 Civ. 3870, 2008 U.S. Dist. Lexis 38726 at *4-*5 (S.D.N.Y. May 12, 2008); *see also Parnell v. Tremont Capital Mgmt. Corp.* No. 07-0752-CV, U.S. App. LEXIS 11619, at *2-*4 (2d Cir. May 10, 2008).

## POINT II.

### THE MAJORITY WAS AWARE OF THE GOVERNING PRINCIPLE THAT COGSA DOES NOT APPLY TO THE PRIVATE CONTRACTS OF CARRIAGE

In their award, the majority of the panel wrote that "it is well established that COGSA and its burdens of proof may be fully incorporated in a private contact of carriage". Exh. 2, p. 8.

Conversely, the panel clearly understood that COGSA by its own terms provides that it is "*not* applicable to charter parties", 46 U.S.C. 1305. COGSA was intended to govern bills of lading and common carriage, not private carriage. *Nichimen Co. v. M.V. Farland*, 462 F.2d 319, 327-28 (2d. Cir. 1972).

## POINT III.

### THE CLEAR WORDING OF THE SPACE CHARTER ONLY PROVIDED FOR A

8

## PARTIAL INCORPORATION OF COGSA

Article 7.1 of the Space Charter between CSX Lines and Maersk provides:

### Article 7:  Liabilities and Indemnities

> 7.1    The *carriage, custody and care* of goods hereunder shall be subject to the Hague Rules, 1924, as enacted in and interpreted under the United States Carriage of Goods by Sea Act, 1936 ("COGSA"), as amended from time to time….(*emphasis supplied*).

Exh. 1.

COGSA provides that a common carrier has far greater obligations with regard to cargo. In addition to "carriage, custody and care for" goods, COGSA also imposes duties to "load, handle, stow" and "discharge" the goods. COGSA, 46 U.S.C. § 1302.  These additional obligations are absent from Article 7.1.

It is plain that Clause 7.1 does <u>not</u> incorporate all of the terms and conditions of COGSA, but only those relating to CSX's duties of "carriage, custody and care…"  No mention whatsoever is made in Clause 7.1 of the other duties listed in COGSA § 1302, such as "loading, handling, stowage or discharge."  The majority of the panel recognized that the Space Charter had been "freely negotiated by the management and legal teams of two of the industry's leading and most knowledgeable owners and operators of ships."  (Exh. 2, p. 8).  The majority also recognized that Clause 7.1 only mentioned "carriage, custody and care" and yet the majority concluded that Clause 7.1 somehow incorporated the entire statute into the Space Charter. There is no reasonable basis for this conclusion.

Section 2 of COGSA sets forth seven (7) duties owed by a Carrier under every common contract of carriage:

### § 1302.  Duties and rights of carrier

>Subject to the provisions of section 1306 of this title, under every contract of carriage of goods by sea, the carrier in relation to the *loading, handling, stowage, carriage, custody, care and discharge of such goods,* shall be subject to the responsibilities and liabilities and entitled to the rights and immunities set forth in Sections 1303 and 1304 of this title (emphasis and double added).

The duties of "carriage," "custody" and "care," which are set forth in Clause 7.1 of the private contract between Maersk and CSX Lines, are very clearly and explicitly listed as three of the seven enumerated duties under Section 2 of COGSA, 46 U.S.C. § 1302.  Indeed, they are listed in Clause 7.1 of the Space Charter (Exh. 1) in the *exact same sequence and order as they are contained in COGSA*.

Clause 7.1 of the Space Charter does not mention the remaining five duties under Section 2 of COGSA.  Nor does the Space Charter mention anything about the other 14 sections of COGSA, 46 U.S.C. § 1300-1315.

No witness from Maersk testified that it was the intent of the parties to make CSX responsible for loading and stowage of cargoes by Maersk's stevedores.  Not only are those duties clearly missing from the language of the Space Charter, but John Keenan, the Vice President of CSX Lines who signed the contract, testified that CSX gave Maersk a "wholesale price" because Maersk was accepting those obligations.  (Exh. 6, p. 677).  There is no evidence that the parties intended that all of the provisions in COGSA were to be incorporated into the Space Charter.

## POINT IV.

### FIRST ELEMENT OF MANIFEST DISREGARD:  THE LEGAL PRINCIPLE OF PARTIAL INCORPORATION OF COGSA WAS WELL DEFINED TO THE PANEL AND CLEARLY APPLICABLE

In its Post Hearing Memorandum, CSX placed the principle of "partial incorporation" squarely in front of the Panel:

The case before this Panel involves private carriage, not common carriage. CSX was not a common carrier vis-à-vis Maersk, and CSX issued no bills of lading to Maersk. The court in ARKTIS SKY recognized that in private carriage the charterer and the carrier <u>can</u> freely decide where to place the responsibility to properly load and stow.

In a subsequent case, the Second Circuit recognized that in a voyage charter party, which is private and not common carriage, the charter contract, not COGSA, governed liability for loading and stowage as between Owner and Charterer. <u>Associated Metals & Minerals Corp. v. S/S JASMINE,</u> 983 F.2d 410 (2d Cir. 1993). See also <u>Great American Insurance Co. v. M/V HANDY LAKER,</u> 2003 AMC 116 (SDNY 2002): "While the duty to load and stow cargo is non-delegable when COGSA applies to the contract for carriage,…parties to a private charter are free to allocate the risks and responsibilities associated with the private carriage of goods. Thus, in private charter parties, 'the responsibility for cargo loss falls on the [party] who agreed to perform the duty involved.' [Citation omitted.]"

In this case, unlike in ARKTIS SKY, the parties agreed that Maersk, not CSX, had the duty to load and stow the cargo. Thus the whole premise upon which ARKTIS SKY was decided—the shipowner's common carrier COGSA duty to load and stow—does not apply to this case. "Where only a portion of COGSA is incorporated into a charter party, only those terms specifically referenced are incorporated as a term of the contract." <u>Great American Insurance Co. v. M/V HANDY LAKER,</u> 2003 AMC 116 (SDNY 2002).

Where the shipowner's duties under COGSA to load and stow do not apply, the charterer is liable for improper stowage. <u>Arbitration between Paxicon and Perdue Farms</u> (NY SMA No. 3568, 1999) (Berg, Sharpe, Zubrod).

Exh. 4, p. 14.

The principle that *partial* incorporation of COGSA into private contracts is valid has long been recognized under U.S. maritime laws. In the classic maritime text book, THE LAW OF ADMIRALTY, by Gilmore & Black, (2d ed. 1975) at 207, the authors state:

The first thing to be noted is that COGSA does not apply to charter parties. Charter party carriage, moreover, is normally looked on as "private" carriage, and as pointed out above there are no statutory

rules forbidding the adjustment of risk for goods damage in any manner provided by the charter.

Professor Schoenbaum, in his respected treatise also recognizes the partial incorporation of COGSA into contracts of private carriage at 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND TRANSPORTATION LAW, (3d ed. 2001) 227, in which it is stated:

> In general, since charter parties are private contracts, the courts allow the parties great latitude in allocating the various risks involved, including loading and stowage of cargo, negligence of the carrier's servants, and even the seaworthiness of the vessel. The charter party will allocate specific duties concerning the cargo and the voyage, and the responsibilities for cargo loss falls upon the party who agreed to perform the duty involved." *Id.*

The Second Circuit has long recognized the right to freedom of contract in private contracts of carriage:

> '[P]arties to a private contract of carriage such as [a] charter party…are not subject to the rigid legal regime imposed by law on common carriers by water under … the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300-15. Where no bill of lading is issued for the cargo, the parties to a charter party enjoy freedom of contract to allocate between themselves responsibilities for loading and stowing the cargo and any necessary preparations.' See *Fernales Shipping Co. v. Bonaire Petroleum Corp.*, 733 F. 2d 381, 383-84 (5th Cir. 1984).

> That freedom often inures to the shipowner's benefit.

> 'The shipowner engaged in private carriage is not deemed an insurer of the safe arrival of the cargo. The private carrier is liable for…damage to cargo only if …proximately caused by his breach of a specific obligation imposed…by the contract of carriage. [T]he parties to a contract of private carriage enjoy complete freedom to adjust the risk….Thus,…the shipowner can…avoid liability for any cause, including liability for his own negligence….Further absent express contractual incorporation, the relations between the parties to a contract of private carriage are never subject to the provisions of…COGSA. In sum, the shipowner's liability…will be determined by the obligations imposed [in the contract of private carriage.]'

*Larsen v. A.C. Carpenter,* 620 F. Supp. 1084, 1106-07, (E.D.N.Y. 1985), *aff'd,* 800 F. 2d 1128 (2d Cir. 1986) (citing Zock*, Anthony N. Charter Parties in Relation to Cargo*, 45 TUL.L.REV. 733, 738-39 (1971). *See also* 2A BENEDICT ON ADMIRALTY, Sec. 22 at 3-2,3 (M. Cohen, 7th ed. 1985).

It is well known that a Paramount Clause can be used to incorporate all of COGSA into a charter party. This Space Charter contained no Paramount Clause and specifically made only (1) carriage, (2) custody, and (3) care, subject to COGSA. "Paramount Clauses" in charter parties customarily provide comprehensive and clear language that the "charter party shall have effect subject to the provisions of the Carriage of Goods By Sea Act, which shall be deemed to be incorporated herein." For a discussion of paramount clauses, see *Associated Metals & Minerals v. S/S JASMINE*, 983 F.2d 410, 413-14 (2d Cir. 1993). The Paramount Clause is "broad, and not limited in application to a specific, limited provision of the charter party." *Stemcore USA, Inc. v. M/V ARCHIMEDES*, No. 02 Civ. 7864, 2004 U.S. Dist. Lexis, 25236 at *7 (S.D.N.Y. May 4, 2004).

The Second Circuit has explicitly recognized the right of partial incorporation of COGSA into private contracts of carriage, and warned that such an incorporation does not trigger the entire convention, even if "similar words" are used in the private contract:

> F.I.C. does argue, however, that TGS (time charter) and MTL (demise owner) agreed to make COGSA and its burden of proof rules applicable to this private carriage, but while they certainly would have made such an agreement, it is clear that they did not.
>
> F.I.C. first contends that the charter party specifically incorporated COGSA in para. 1, para.6, para. 23 and para. 28. These first three paragraphs, however, make no mention of COGSA whatsoever, but simply use the phrase that the owner shall exercise due diligence to keep the vessel in a seaworthy condition – language roughly paralleling that contained in Section (4) 1 of COGSA. 46

> U.S.C. Sec. 1304 (1). *This mere similarity of rather common phrases does not invoke the entirety of COGSA, including its burdens of proof rules*. *cf. Pannell v. United States Lines Co.,* 263 F.2d 497, 498 (2d Cir.), *cert. denied*, 359 U.S. 1013, 79 S. Ct. 1151, 3 L. Ed. 2d 1037 (1959).    While para. 28, captioned "Limitation of Liability" does provide that the owner shall have all "privileges, rights, and immunities as are contained in Sections 3(6), 4 and 11 of the Carriage of Goods by Sea Act", this too is not a general incorporation of COGSA, as the reference is limited to specific provisions of COGSA, favorable to the owner. *When a statute is incorporated by reference, its terms become the terms of that part of the charter party, but limited incorporation does not trigger the entire Act. Pannell, supra,* at 498; *see also J. Aron & Co. v. The Askvin,* 267 F.2d 276 (2d Cir. 1959); *The Westmoreland, supra,* 86 F.2d at 97. (emphasis added).

*In re Marine Sulphur Queen,* 460 F.2d 89, 103 (2d Cir. 1972).

Most importantly, in its Post-Hearing Memorandum, CSX Lines cited the arbitration panel to *Associated Metals & Minerals Corp. v. S/S Jasmine*, *supra*.  (Exh. 4, p. 14).  That case clearly stands for the principle that the Second Circuit requires that  there must be a showing of "clear intent" to incorporate COGSA into a charter party, and not just a mere reference:

> "The parties *must* clearly indicate their intention to incorporate [COGSA] into the charterparty itself. Thus, contracts of private carriage *must evidence a clear intent* to incorporate COGSA into the charterparty itself…." (emphasis supplied)

*Associated Metals & Minerals Corp.,* 983 F. 2d at 412-13.

More recently, it has been acknowledged that COGSA is not to be read into charter parties, and it must be shown that the parties "voluntarily" subjected themselves to the terms of COGSA incorporated into the charter:

> COGSA applies to "every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea. 46 U.S.C. App. Sec. 1300. However, COGSA's provisions are inapplicable to private charter parties. 46 U.S.C. App. Sec. 1305. Therefore "charter parties" are not automatically covered by COGSA, and in order for COGSA to govern the relations between the parties, the parties must voluntarily subject themselves to its provisions." *Great Am. Ins. Co., v M/V Handy Laker*, 2002 U.S.

Dist. LEXIS 27378, No.97 Civ. 7400 (BSJ), 2002 WL 32191640, at *13 (S.D.N.Y. Dec. 19, 2002); accord *S/S Jasmine*, 983 F. 2d at 412-13 (Because charter parties are statutorily exempted from automatic coverage under COGSA, if the Act is to apply, the parties must clearly indicate their intention to incorporate it into the charterparty itself").

*Stemcor U.S.A., Inc. v. M/V Archimedes,* No. 02 Civ. 7864, 2004 U.S. Dist. LEXIS 25236, at *7 (S.D.N.Y. May 4, 2004).

Indeed, even assuming *arguendo* that COGSA is incorporated generally in its entirety into a contract not governed by COGSA, the parties are still free to modify the principles of COGSA. In the case of *Pannell v. United States Lines*, 263 F.2d 497, 498 (2d Cir. 1959), *cert. denied*, 359 U.S. 1013 (1959), which was cited to by the Court in *In re Marine Sulphur Queen*, the Second Circuit held that the parties were entitled to define what is a "package" even though all of COGSA had been incorporated into the contract. *Pannell, supra,* at 498. The Second Circuit concluded that the parties were allowed to make a specific modification to COGSA when it is incorporated generally. *Id.*

## POINT V.

## SECOND ELEMENT OF MANIFEST DISREGARD: THE PANEL IMPROPERLY APPLIED THE LAW

In the award, the panel recognized that Clause 7.1 specifically excluded "loading" or "stowing". (Exh. 2, p. 8). Nevertheless, the majority ruled that *all* of COGSA, including loading and stowing, was fully incorporated into the private contract, as were the burdens of proof applicable to COGSA, which were *not* even mentioned in Article 7.1:

> CSX's principal argument on the application of COGSA in its entirety to the losses in question is that the COGSA incorporation clause referred to is nothing more than a partial incorporation of COGSA. As Article 7.1 does not specifically mention "loading" or "stowing", CSX asserts the stowage obligation rests with Maersk.
>
> It is well established that COGSA and its burden of proof may be fully incorporated in a private contract of carriage, *La Libertad, 529 F. Supp 78 (SDNY 1981); The Rodosto, SMA 2222 (1986);*

15

> *and The JoAnne, SMA 3026 (1993). Also see Pare, "The Burden of Proof in Cases of Cargo Loss and Damage where the US Carriage of Goods by Sea Act has been Incorporated into a Charterparty", 25 Tulane Maritime L.J. 491 )2001).* The majority concludes that Article 7.1 fully incorporates all of the terms and conditions of COGSA, including its burdens of proof and CSX's non-delegable duty of proper stowage.

(Exh. 2, p. 8).

The majority had no authority to expand "carriage, custody and care" to include "load" "stow" and "discharge" thus re-assigning the duties which Maersk assumed under the contract to CSX. This manifest disregard of the plain language of the contract is a prime example of overreaching by the majority.

In sum, although the majority of the panel acknowledged that "parties to a private contract of carriage incorporating COGSA are, of course, free to modify the terms of COGSA, shifting the fundamental responsibilities of the statute as well," (Exh. 2, p.8), they still disregarded the clear intent of the parties and concluded that the parties had incorporated the entire statute.

The majority erroneously concluded that Clause 7.1 was intended to incorporate <u>all</u> of COGSA, although no explanation is given by the two arbitrators as to why the words "loading," "handling," "stowage," and "discharge" were obviously excluded entirely from Clause 7.1, and indeed the entire private Contract. (Exh. 2, p. 8).

As a consequence of this unsupported and erroneous holding, the majority of the panel concluded that CSX Lines had a "non delegable" duty to "load" and "stow" the cargo aboard the three vessels. (Exh. 2, p. 8). As a result of this unsupported conclusion, the majority enlarged CSX's obligations toward the cargo. The fact that the carrier's duty became non-delegable meant that Maersk could make out a *prima facie* case against CSX simply by establishing that

the goods were delivered to the ships, and the cargo did not arrive at destination. *Associated Metals & Minerals Corp. v. M/V Arktis Sky,* 978 F.2d 47, 51 (2d Cir. 1992).

The majority exceeded its authority by placing the burden on CSX to establish that there was "clear and explicit language" in the Space Charter to evidence that the duties of loading and stowage were "different and inconsistent with the express provision of COGSA," (Exh. 2, p.9). The majority refused to employ the rule established under *In re Marine Sulphur Queen,* 460 F.2d 89, 103 (2d. Cir. 1972); *Associated Metals & Minerals v. S/S JASMINE*, 983 F.2d 410, 412-413 (2d Cir. 1993); *Great American Ins. Co. v. M/V Handy Laker,* 2003 AMC 116 (S.D.N.Y. 2002); and by this court in *Stemcore USA Inc. v. M/V Archimedes,* No. 02 Civ. 7864, 2004 U.S. Dist. Lexis, 25236 at *7 (S.D.N.Y. May 4, 2004), that the burden was on Maersk to establish that there was a clear intent to voluntarily incorporate all of COGSA into the Space Charter.

The majority reached its conclusion that "there is a need for clear words if there is to be a transfer of the obligations to load, stow and discharge" (Exh. 2, p.9) based on a reference to *Voyage Charters* (3rd ed. 2007). That section of *Voyage Charters* was not cited by any of the parties, and was obviously obtained through the majority's own research. Most importantly, the law cited in the textbook, Sections 85.110 and 14.55, is based on English authorities, not American authorities. (*See* footnotes 3 and 4 by the majority at Exh. 2, p. 9). This was in flagrant disregard of Article 11 of the private Contract which provided:

> This Agreement and any arbitration under this Article shall be governed by the laws of the State of New York with the exception of the rules of conflict of laws thereof, and except as governed by the federal maritime law of the United States. (Exh. 1)

The majority went beyond the scope of its authority under clause 11 of the Space Charter, by applying British law to the interpretation of the contract which was agreed to be subject only to New York and U. S federal maritime law. Even Mr. Arnold, the dissenting arbitrator, noted that:

17

> The majority cites from Voyage Charters (3rd Ed. 2007), Section 85,110, which is preceded by the omitted introductory sentence , "it is reasonably, although not entirely, clear what is required…" Furthermore, the cases relied upon by the authors in Section 14.55 and 85.110 are English cases and, in my opinion, stand  in direct contradiction to the accepted rules of interpretation."

Exh. 2, p. 3 dissent.

The only American case cited, at footnote 3 of the Award by the majority (Exh. 1), is *Nichimen v. m/v Farland*, 462 F.2d 319, 330 (2d Cir. 1972), which in fact stands for the proposition that:

> …the courts have often struggled to determine if responsibility for loading, stowage, and discharging cargo has been shifted to the charterer, either by a charter party provision or by action or custom of the particular parties.

*Id.* at 331.  In the *M/V Farland*, the Court of Appeals concluded that even though the charter party provided that the Captain was to supervise stowage, the obligation for loading and stowage of the cargo still remained on the charterer who engaged the stevedores.

> The charterer's prime responsibility for loading and stowage is not destroyed by the qualification that this shall be "under the supervision of the Captain"….Had the stowage in this case been properly designed by the charterer's agent, no damage would have occurred. The primary negligence was on the charterer's agent, and we can discern no valid reason why the charterer would now be allowed  to shift the cargo damage to the owner on the theory that the Captain, on behalf of the owner, should have corrected its improper stowage."

*Id.* at 332.

Nothing is said in the Space Charter about loading, stowage or discharge.  Indeed, the majority acknowledged that it was "Maersk's APM Terminal stevedores (that) loaded its cargo at Kaoshiung. Maersk paid the stevedoring charges for the loading of its containers…" (Exh. 2, p. 2).  Yet the majority concluded that CSX Lines, as the shipowner, remained responsible for loading and stowage because "the safety of the vessel and its crew remains paramount so a delay

18

of a few hours, if necessary, to check the (Maersk's) stevedore's preliminary stow plans, is a requirement that cannot be minimized or ignored." (Exh. 2, p. 10)

> This conclusion is in conflict with the *m/v Farland* case, which makes clear that:

>> …we think the owner's liability for cargo damage due to improper stowage is limited to instances in which the Captain intervenes in the stowage process to protect the *vessel's* safety and ability to withstand the perils of the sea; *to the extent that he acts merely to protect the cargo, the charterer is responsible.* (Emphasis supplied).

*Id.* at 333.

> Moreover, nowhere in the Space Charter between Maersk and CSX does it provide that the "burdens of proof" under COGSA should control the Contract. The majority acknowledged that the Space Charter was "private" in nature and no bills of lading were to be issued by CSX. (Exh. 2, p. 8). Any agreement to radically change the burdens of proof from a formula used in private carriage to a formula used in common carriage should have been identified by the Arbitrators. The majority did not cite to any language in the Contract which established that the parties agreed to adopt common carriage burden of proof standards – because there is none. The Panel simply assumed that burden of proof requirements flowed from a reference to parts of COGSA in Clause 7.1. However, the burden of proof provisions used in COGSA are not contained in COGSA. Rather, they arise out of general maritime case law going back to the 1800's. *See Lekas & Drivas, Inc. v. Goulandris,* 306 F.2d 426, 429 (2d Cir. 1962)(*citing Edward Weil, Inc. v. American West African Line, Inc.*, 147 F.2d 363, 366 (2d Cir. 1945) (*citing The Edwin I. Morrison,* 153 U.S. 199, 211, 14 S. Ct. 823, 38 L. Ed. 688 (1894)).

> The dissenting arbitrator, Mr. Arnold, correctly identified the failure by the majority in respect to the burden of proof issue:

>> Under my interpretation of the burden of proof, as applicable to this particular case, it is not sufficient to show, as Maersk argues

and the majority finds, that the cargo was delivered in good order and condition and not discharged/delivered in like good order. Maersk must prove that the actual fault of the carrier was the cause of the damage, which, under this contract with partial incorporation of COGSA, it has not done.

Exh. 2, dissent, pp. 7-8.

As the Second Circuit held in the *S/S Jasmine, supra,*

In private carriage, unlike COGSA, the burden of proving damage as well as the cause of the damage remains always with the plaintiff (internal citations omitted). Thus, the charter must prove *that the cargo damage was proximately caused by the carriers breach of a specific obligation contained in the contract of carriage.... If the evidence on cause of damage or source of negligence is in equipoise, the charterer-plaintiff's claim must fail.* (Emphasis supplied).

*Id.* at 414. In fact, the majority made no finding as to the causation of the containers falling overboard from the three vessels. (Exh. 2). Failing to make such a finding is not only a manifest disregard of the law, but it is respectfully submitted, also leaves the Award unfinished, and consequently, "so imperfectly executed that a mutual, final and definite award upon the subject matter" submitted was not made. FAA, 9 USC Sec. 10(a)(4).

## POINT VI.

## THIRD ELEMENT OF MANIFEST DISREGARD: THE MAJORITY IGNORED THE LAW OF PARTIAL INCORPORATION

The majority made no overt effort to acknowledge that partial incorporation of COGSA into the Space Charter was permissible. Therefore, the decision stands for the incorrect proposition that a partial reference to some of the duties of a shipowner under COGSA triggers not only all of the duties owed under Section 2 of COGSA, but even triggers the application of the burden of proof doctrines under COGSA.

Under the manifest disregard doctrine, in order to intentionally disregard the law, an "arbitrator must have known of its existence and its applicability to the problem before him."

*Duferco, supra,* at 390. If the law is not identified by the parties, then "knowledge and intentionality" of the arbitrators will be inferred if there is "an error that is so obvious that it would be instantly perceived as such by an average person qualified to serve as an arbitrator." *Duferco, supra,* at 390.

Petitioner submits that proof of the Panel's intentional disregard of the law on partial incorporation can be established from the following factors:

1.     *The majority panel was comprised of arbitrators who had a law school education, and were not just mere laymen.* The two arbitrators who wrote the majority award were not laymen arbitrators. Mr. Martowski, the Chairman, is a graduate of Fordham Law School, with a Master's in law from New York University Law School and was a member of the New York and federal bar for many years when he specialized in maritime practice with the well-known maritime law firm of Kirlin Campbell & Keating in New York.[2] Mr. Jack Berg, the other majority panel member, was a graduate of New York University Law School, although it is unknown if he ever participated in private or corporate practice.[3]

2.     *The majority panel performed their own legal research without aide of the parties.* The cases cited at footnotes 1 and 2 of the Award were not cited to the Panel by any of the parties, but rather were quoted by the majority based on its own research. (Exh. 2, p. 8-9. fn. 1 and 2). If the panel had the resources to do their own legal research, they certainly had the opportunity and means to research the law of partial incorporation and burden of proofs. Yet they cited only to their own arbitration awards and horn book.

3.     *The cases cited by the majority at footnote 1 of its Award, Exh. 2, p. 8, are inapposite*, because each of those cases involved a "General Paramount clause" which

---

[2] http://www.smany.org/sma/memberroster.html
[3] *Id.*

specifically incorporated *all* the terms and conditions of COGSA into the charter party. (Exh. 2, p. 8) *See M/V LA LIBERTAD,* 529 F. Supp. 78, 82 (S.D.N.Y. 1981) (The Charter Party contains a Clause Paramount incorporating COGSA); *The Rodosto,* SMA 2222, p. 3 (Mar. 17, 1986) (Jack Berg, Chairman) ("Clause 20 of the charter party covers the issuance of bills of lading and specifically incorporates as (b) (i) CLAUSE PARAMOUNT."); *The Jo Anne,* SMA 2026, p. 4 (Nov. 5, 1993)(David Martowski, arbitrator)("…the language of clause 20(b) of the ASBATANKVOY charter party form incorporates COGSA into the charterparty in its entirety as well as into bills of lading…").

4.      *What the majority avoided citing to were other Society of Maritime Arbitration Awards* in which the concept of partial incorporation was fully acknowledged by the Arbitrators. *See, e.g., In the matter of Sociedade Portugueas de Navios Tanques, Ltd.,* SMA No. 1815 (1983); and *In the matter of Petroleo Brasileiro S.A.,* SMA 3051 (1994).

5.      *Mr. Manfred Arnold, the dissenting arbitrator, who is not an attorney, made clear in his dissenting opinion why in this matter there was only a partial incorporation of COGSA into the private contract:*

> I do not accept that COGSA should apply to this CoA (Contract of Affreightment) in total…It is my position that under the private contract of carriage concept, the parties used specific and limiting language specifically to describe the agreed-to responsibilities of the Owner, namely, "the carriage, custody and care of the goods." It does not state "…load, handle, stow, carry, keep, care for, and discharge the goods carried." Why indeed should it, as Maersk undertook to load, stow, secure and discharge the cargo".

Exh. 2, p. 2-3 dissent.  The opinion of Mr. Arnold was obviously ignored by the majority.

6.    *The majority made no overt effort to acknowledge that partial incorporation was even permissible.* The majority did not mention, let alone discuss, the four critical decisions from the Second Circuit cited to by CSX in respect to partial incorporation: *In re Marine Sulphur Queen,* 460 F. 2d 889 (2d Cir.), *cert. denied,* 409 U.S. 982 (1972)*; Associated Metals & Minerals Corp v. M/V ARKTIS SKY,* 978 F. 2d 47 (2d. Cir 1992); *Stemcore USA Inc. v. M/V Archimedes,* No. 02 Civ. 7864, 2004 U.S. Dist. Lexis, 25236 at \*7 (S.D.N.Y. May 4, 2004); or *Great American Insurance Co. v. M/V HANDY LAKER,* 2003 AMC 116 (S.D.N.Y. 2002).

7.    *Failure to cite to other sections of the text.*  While the majority of the panel cites to *Voyage Charters* (3rd ed. 2007) (Exh. 2, p. 9), (a book which was co-authored by the arbitrator Mr. Martowski) for the proposition that COGSA was incorporated in its entirely, the majority failed to cite to Section 85.1-2 of the same book which states:

> However, they (Hague Rules which include COGSA and Hague Visby Rules) are *not* compulsorily applicable to charter parties and they must be *incorporated expressly* if it is intended that they should apply as between shipowner and charters…the precise formulation of Paramount Clause incorporation must, however, always be carefully considered, for there are a number of different formulations…and they achieve different levels of incorporation and potentially different results." (Emphasis supplied).

The majority also ignored Section 11.104 of the same text, which involves a specific review of American law, and states that:

> The question of whether COGSA or the Harter Act is incorporated by reference in the charter is usually easily determined simply by reference to whether there is a clause paramount.  In order to effectively incorporate either Act in the charter, the clause paramount must expressly so provide.  In *Associated Metals & Minerals Corp. v. The Jasmine*, it was held that a clause paramount which merely provides that bills of lading are to include a clause making them subject to COGSA did not have the effect of incorporating that Act into the charter.  See also *Nissho-Iwai Co. v. The Stolt Lion.*

The majority also ignored, without explanation, Section 11.141 of that text took which again cited to the *S/S JASMINE* case, *supra*, for the proposition that:

> The burden of proof in connection with claims for cargo loss or damage will usually depend on whether the charter contains a clause paramount which incorporates COGSA.  In the case of a Gencon form of charter which does not contain a clause paramount the burden of proving that cargo loss or damage or delay resulted from an unseaworthy condition is on the charterer.

It is not clear why the majority referenced the text in <u>*Voyage Charters*</u> since the subject Space Charter (Exh. 1) was for a five-year period, and therefore is more analogous to a time charter party.   The same publisher of <u>*Voyage Charters*</u> also publishes <u>*Time Charters*</u>, (4 Ed. 1995) Lloyds of London Press, which states at page 522 that:

> Although the Harter Act and COGSA do not by their terms apply to charters, they may effectively be incorporated <u>in whole or in part</u> in the charter.  See, *e.g. United States v. the Marilena P,*  433 F.2d 164, 169 AMC 1155 (4th Cir. 1969), the *Marine Sulphur Queen*, 460 F.2d 89, 1972 AMC 1122 (2d Cir.) *cert. denied*, 409 U.S. 982 (1972).

The can be no question that the majority ignored and avoided discussing the laws of partial incorporation, even though it was directly pointed to the basic principles of that law in Petitioners brief; in the dissenting opinion; in the textbook 'Voyage Charters' relied upon by the majority; and in the relevant cases cited by Petitioner to the panel.  The majority's effort to hold CSX to a common carrier status is tantamount to some "secretly cherished" intention not reflected in the Private Contract.  (Exh. 2, p. 4 dissent).

## **CONCLUSION**

It is agreed that petitions to vacate arbitration awards should not be freely granted. However, there should be a 'line in the sand' which prohibits arbitrators from skewering an Award so as to allow them to leap-frog to a result they wish to achieve without consulting or recognizing long-standing and well-recognized legal principles of freedom of contract permitted in maritime law.  The arbitrators, who had the benefit of law school education and training, as well as long careers in maritime arbitration, should be held to a high standard to insure that the parties to arbitration proceedings they oversee have the same basic principles of laws used in the courts applied correctly and fairly.  Otherwise, arbitration becomes a lacuna, lacking the predictable and customary laws that every citizen expects, and creates a parallel world of arbitrary laws.  The result will be that commercial parties will seek to avoid an uncontrolled and unregulated arbitration system, and return to the formal legal system, where there is a system in place to address errors.

CSX Lines respectfully requests that its Petition to Vacate the Award of January 30, 2008 be granted, and that the Award be set aside on the grounds that the majority manifestly disregarded the facts and the governing law, exceeded their powers, engaged in misconduct, and so imperfectly executed them, as to render the Award void.

**DeORCHIS & PARTNERS, LLP**
Attorneys for Petitioner, CSX Lines, LLC

By:     /s/ Vincent M. DeOrchis
        Vincent M. De Orchis, Esq. (VMD-6515)
        61 Broadway, 26th Floor
        New York, New York  10006-2802
        (212) 344-4700

*- Of Counsel -*
John A. Orzel, Esq. (JO-2420)
M.E. De Orchis (MD-3194)
Justin Waytowich

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

HORIZON LINES, LLC, f/k/a
CSX LINES, LLC,

                       Petitioner,                  08 Civ. 3982 (JSR)

     -against-                               CIVIL ACTION

A.P. Moller, Managing Owner of
MAERSK-SEALAND, INC.,

                         **DECLARATION OF VINCENT M.**
                         **DeORCHIS IN SUPPORT OF**
           Respondent.      **PETITIONER'S MEMORANDUM OF**
                         **LAW TO VACATE UNLAWFUL**
                         <u>**ARBITRATION AWARD**</u>

-----------------------------------------------------------X

**VINCENT M. DeORCHIS,** an attorney admitted to practice in the courts of the State of New

York and not a party to this action, hereby affirms that the following is true under penalty of

perjury:

      1.      I am a member in good standing of the Bar of this Honorable Court and a

partner with the law firm of DeOrchis & Partners, LLP, attorneys for petitioner Horizon

Lines, LLC f/k/a CSX Lines, LLC (hereinafter "Horizon Lines") in the above-captioned

action.

      2.      As such, I am familiar with the facts and circumstances of this matter.

      3.      I submit this Affidavit in support of Petitioner's memorandum of law to Vacate

the Unlawful Arbitration Award dated January 30, 2008.

      4.      I hereby incorporate and rely upon the facts as set forth in Petitioner's Verified

Application to Vacate Arbitral Award dated January 30, 2008 previously filed in this matter on

April 28, 2008, as a substitution for a duplicitous affidavit.

5.     I certify that the foregoing statements made by me are true.  I am aware that if
any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: _____
VINCENT M. DeORCHIS

Dated: New York, New York
       June 27, 2008