298-01/WDM/GMV
FREEHILL HOGAN AND MAHAR, LLP
Attorneys for Respondent Maersk
80 Pine Street, 24th Floor
New York, New York 10005
Tel: 212 425 1900
Fax: 212-425-1901
Wayne D. Meehan (WM 9102)
Gina M. Venezia (GV 1551)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HORIZON LINES, LLC., f/k/a CSX LINES, LLC., | 08-CV-3982 (JSR) |
| Petitioner | |
| -against- | |
| A.P. Moller, Managing Owner of MAERSK-SEALAND, INC., | |
| Respondent | |

## MAERSK'S MEMORANDUM OF LAW
## IN OPPOSITION TO CSX'S APPLICATION
## TO VACATE THE ARBITRATION AWARD AND
## IN SUPPORT OF MAERSK'S CROSS-MOTION
## FOR CONFIRMATION OF THE AWARD AS A JUDGMENT.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................ 1

SUMMARY OF ARGUMENT ...................................................................................... 1

FACTUAL SUMMARY ................................................................................................ 2

    A.    The Contract.................................................................................................. 2

    B.    The Subject Voyages and the Claims Presented to
           and Settled by Maersk.................................................................................. 3

    C.    CSX's Arguments in Arbitration ................................................................. 4

    D.    The Panel's Award and CSX's Arguments Herein....................................... 5

LEGAL DISCUSSION.................................................................................................. 6

POINT I

    THE BASES FOR VACATING AN AWARD
    ARE SEVERELY LIMITED.................................................................................. 6

    A.    An Arbitrator's Interpretation of a Contract is
           Not Subject to Judicial Review..................................................................... 7

    B.    The Grounds for Overturning an Award are
           Set Forth by Statute and are Limited ........................................................... 7

    C.    Manifest Disregard is no Longer a Basis For
           Vacating an Arbitration Award...................................................................... 8

    D.    Even if Available, Use of Manifest Disregard to
           Vacate an Award is Limited. ........................................................................ 9

POINT II

THE PANEL'S AWARD WAS CORRECT, CONSISTENT
WITH EXISTING APPLICABLE PRECEDENT, AND
WAS NOT IN "MANIFEST DISREGARD" OF THE LAW ..........................................11

A.    The Arbitrators' Interpretation of the Contract
is Not Subject to Judicial Review ........................................................................11

B.    Even if the Panel's Contract Interpretation was
Subject to Judicial Review, the Panel did not Ignore
or Misapply the Law of Partial Incorporation......................................................12

      1.    Panel's interpretation of the Contract is
            consistent with the remaining language in
            the Contract which imposes responsibility
            for stowage on CSX. ................................................................................14

      2.    The Panel's interpretation is consistent with
            the understanding of the parties. .............................................................15

POINT III

CSX'S ARGUMENT THAT THE PANEL MISAPPLIED
THE LAW ON THE BURDENS OF PROOF IS INCORRECT
AND LEGALLY IRRELEVANT. ..................................................................................18

POINT IV

MAERSK IS ENTITLED TO CONFIRMATION OF THE AWARD ............................20

CONCLUSION..............................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Associated Metals & Minerals v. M/V Arktis Sky*, 978 F.2d 47, 49 (2d Cir. 1992) .................. 5, 14

*Associated Metals and Minerals Corp. v. SS Jasmine*, 983 F.2d 410 (2d Cir. 1993) ................... 19

*Asturiana de Zinc Mktg, Inv. v. Austmet*, 20 F.Supp.2d 670, 671 (S.D.N.Y. 1998) ................... 6, 7

*Banco de Seguros del Estado v. Mut. Marine Office, Inc.,* 344 F.3d 255, 260
    (2d Cir. 2003) ........................................................................................................ 6, 10, 11

*California and Hawaiian S. Co. v. Columbia S.S. Co., Inc.,*
    391 F.Supp. 894, 897 (E.D. La. 1972), aff'd 510 F.2d 542 (5th Cir. 1975) ........................ 13, 18

*Carte Blanche (Sing.) Pte., Ltd. v. Carte Blanche Int'l Ltd.,* 888 F.2d 260, 265
    (2d Cir. 1989) ........................................................................................................ 10

*Duferco Int'l Steel Trading v. T. Kalveness Shipping A/S,* 333 F. 3d 383, 389
    (2d Cir. 2003) ........................................................................................................ 10, 11

*GMS Group, LLC v. Benderson,* 326 F.3d 75, 81 (2d Cir. 2003) ........................................ 6, 10,17

*Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 27 (2d Cir. 2000),
    *cert. denied,* 531 U.S. 1075 (1969) ........................................................................... 10

*Hall Street Assocs., LLC v. Mattel, Inc.,* 128 S. Ct. 1396 (2008) ........................................ 8, 9, 20

*Hoeft v. MVL Group, Inc.,* 343 F.3d 57, 71 (2d Cir. 2003) ............................................... 11

*Horn v. Cia de Navigacion Fruco, S.A.,* 404 F.2d 422 (5th Cir. 1968),
    *cert. denied,* 394 U.S. 943 (1969) ............................................................................. 13, 18

*In re Andros Compania Maritima,* 579 F.2d 691, 704 (2d Cir. 1978) ................................... 7

*In re I/S Stavborg,* 500 F.2d 424, 431 (2d Cir. 1974) ..................................................... 7

*Kerr-McGee Refining Corp. v. M/V La Libertad,* 529 F. Supp. 78, 82 (S.D.N.Y. 1981) ............. 18

*M/T Stolt Lion,* 617 F.2d 907 (2d Cir. 1980) ............................................................... 11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir. 1986) ........... 8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Savino,* No. 06-cv-868 (LAP), 2007 U.S. Dist.
    LEXIS 23126 (S.D.N.Y. Mar. 23, 2007) ..................................................................... 7

*Nichimen v. M/V Farland*, 462 F.2d 319, 330 (2d Cir. 1972) ................................................. 13, 14

*Robert Lewis Rosen Assocs., Ltd. v. Webb*, No. 07-cv-11403 (RJH), 2008 U.S. Dist. LEXIS 51446, 8-9 (S.D.N.Y. July 7, 2008) .................................................................................. 7, 8, 9

*Shell Oil Co. v. M/T Gilda*, 790 F.2d 1209, 1213 (5th Cir. 1986) ................................................ 18

*Sole Resorts, F.A. de C.V. v. Allure Resorts Mgmt., LLP*, No. 05-cv-0978 (JSR), 2007 U.S. Dist. Lexis 19753 (S.D.N.Y. Feb. 26, 2007) .................................................................................... 10

*Sucrest Corp. v. M/V Jennifer*, 455 F. Supp. 371 (D.Me. 1978) .................................................... 5

*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)................................. 7, 10

*Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 213 (2d Cir. 2002)....................... *passim*

*Wilko v. Swan*, 346 U.S. 427 (1953) ............................................................................................. 8

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir 1997)........................................................................................... 6-7

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 25 (2d Cir. 1997).................. 7

**Arbitration Awards**

*In Re T/B Florida*, SMA No. 3628 (N.Y. Arb. 5/25/00)......................................................... 13, 18

*Phillips 66 Co. v. Marine Specialties Co.*, SMA No. 3026 (N.Y. Arb. 1993)........................ 13, 18

*Rio Energy Int'l Inc. v. Moran Towing of Texas, Inc.*, SMA No. 3628 (N.Y. Arb. 2000) ........... 18

*The Jo Anne*, SMA No. 3026 (N.Y. Arb. 1993) ..................................................................... 13, 18

*The Maastrom*, SMA No. 2944 (N.Y. Arb. 1993) ........................................................................ 18

*The Venture*, SMA No. 2681 (N.Y. Arb. 1990)...................................................................... 13, 18

**Statutes**

Federal Arbitration Act (FAA), 9 U.S.C. §9.............................................................................. 20

FAA, 9 U.S.C. §10............................................................................................................... 7

FAA, 9 U.S.C. §11............................................................................................................... 7

U.S. COGSA, 49 Stat. 1207 (1936), COGSA §3(2)................................................................. 12

## INTRODUCTION

Respondent A.P. Moller A/S (hereinafter "Maersk") submits this memorandum in opposition to the petition filed by Horizon Lines f/k/a CSX ("CSX"), seeking an order vacating the arbitration award issued on January 30, 2008 (the "Award"), and in support of Maersk's cross-motion to confirm the Award pursuant to 9 U.S.C. §9.

## SUMMARY OF ARGUMENT

In its quest to re-argue its case, CSX ignores the "extremely limited" scope of the Court's review of the Award. Indeed, under the guise of a manifest disregard of the law theory, CSX invites the Court to re-examine the Panel's[1] interpretation of the contract at issue. However, under well-established principles governing judicial review of arbitral awards under the Federal Arbitration Act ("FAA"), an arbitrator's interpretation of a contract is not subject to judicial review.

Even if the Panel's contract interpretation was subject to review, CSX cannot carry the substantial burden required to establish manifest disregard. CSX argues that COGSA was only partially incorporated in the contract and that the Panel disregarded the concept of partial incorporation. The Panel did not reject or ignore the concept. On the contrary, the Panel acknowledged the concept but simply found that there was no partial incorporation in this case and construed the contract to incorporate COGSA in full, thereby placing responsibility for stowage on CSX. The Panel's construction of the contract was correct and in accord with applicable legal precedent. Under the circumstances, the Award must be confirmed in accordance with the mandatory provisions of the FAA.

---

[1] Maersk's reference to the "Panel" herein refers to the Panel majority of Arbitrators Martowski and Berg.

## FACTUAL SUMMARY

While a court's review of an arbitration award does not include the arbitrators' factual findings,[2] Maersk believes it is helpful to summarize the factual background underlying the dispute and the issuance of the Award. Thus, a brief summary is provided herein.

### A.    The Contract.

In December 1999, Maersk and CSX entered into the subject contract (the "Contract") under which CSX, as vessel owner, chartered space to and transported containers for Maersk, as charterer, from Far East to U.S. West Coast ports. (Ex. 6: Keenan Tr. 659:4 - 665:22).[3]   CSX also transported containers pursuant to the Contract on its own behalf to and from the U.S. West Coast, Hawaii and Guam. (*Id.* at 665:16 – 666:8).

The anticipated route under the Contract outbound from the U.S. was Tacoma, Hawaii, Guam, Hong Kong, and Kaohsiung. CSX World Terminals' stevedores loaded the containerized cargo at Hong Kong, and APM Terminal stevedores loaded it at Kaohsiung. CSX repeatedly refers to the APM Terminal stevedores as "Maersk's stevedores", but Maersk simply paid the stevedoring charges at Kaohsiung. However, all lashing equipment for the containers loaded onboard (*e.g.* stacking cones, twistlocks, ISO sockets, etc.) was owned and maintained by CSX. (*See* Award, Ex. 2 and Ex. A, p. 2).

With respect to the loading of containers, it was undisputed that the vessel crew had ultimate control over whether any cargo could be loaded or how. The stevedores provided

---

[2] A court is bound to the arbitrator's factual findings, when reviewing an award. *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 213 (2d Cir. 2002).

[3] Exhibits submitted by CSX were numbered 1-6, and any exhibits submitted by Maersk are labeled with letters.  CSX submitted portions of Mr. Keenan's testimony as Ex. 6 to their petition.  The page references to his testimony (as well as any other testimony) are referenced herein in the format of page:line – page:line.

preliminary stow plans, but those plans were proposals, subject to the ultimate approval of the ship's officers. CSX's ships officers understood it was their obligation to verify that all container stack weights were proper and correct any deficiencies, and in fact, it was CSX's company policy for their chief officers to check the stack weights and correct any deficiencies before allowing the vessels to sail. (Award p. 10).

With respect to the parties' legal responsibilities, the Contract provided that:

### Article 7: Liabilities and Indemnities

**7.1**: The carriage, custody and care of goods hereunder shall be subject to the Hague Rules, 1924, as enacted in and interpreted under the United States Carriage of Goods by Sea Act, 1936 ("COGSA"), as amended from time to time. ... .

For the purposes of determining any limitations of liability available the descriptions, weights, numbers/packages and customary freight units indicated in the Maersk Bill of Lading issued to its customers shall be deemed conclusive and binding as between Maersk and CSX.

**7.2**: As between the parties, CSX shall have the same rights, defences, limitations and exoneration as Maersk has to or against its shippers in relation to goods transported under this Agreement ....

(Ex. 1: Contract, Article 7). There is no express language in the Contract similar to that used in the well-known New York Produce Exchange ("NYPE") charter party form which shifts legal responsibility for improper stowage to a charterer. (Ex. 6: Keenan Tr. 702:18 - 703:12).

## B.    The Subject Voyages and the Claims Presented to and Settled by Maersk.

During 2000, while en route from Asia during the winter months, CSX's containerships (the HAWAII, PACIFIC, and DISCOVERY) encountered adverse weather, resulting in damage to certain containers and the loss of a number of containers overboard. In January 2000, the HAWAII lost 20 containers when the vessel allegedly took a 45° roll. The PACIFIC lost 20 containers, in January 2000, when that vessel also allegedly took a 45° roll. Finally, in

December 2000, the DISCOVERY lost 16 containers, when that vessel also allegedly took a 45°
roll.[4]

Following the casualties, numerous cargo claims were asserted against Maersk as the bill
of lading issuer in the total amount of $6,098,459.29. CSX was aware of the claims filed against
Maersk and agreed that those should be settled on best terms. Maersk settled the claims for
approximately 50% and then sought reimbursement against CSX to recover the amounts paid in
settlement, interest, attorney's fees and costs.

**C.    CSX's Arguments in Arbitration.**

CSX refused to reimburse Maersk for the losses incurred, taking the position that the
containers went over the side as a result of excessive stack weights which CSX maintained was
Maersk's responsibility.[5] In support of this position, CSX argued that Article 7.1 only provided
for "carriage, custody and care" pursuant to COGSA but did not mention "loading" or "stowing".
CSX argued that the absence of "loading" and "stowing" indicated the parties' intent to only
incorporate COGSA partially and to make Maersk legally responsible for stowage. This
argument was raised for the first time, some five years after the voyages and almost three years
after Maersk requested reimbursement from CSX, *see* Ex. 3: CSX's Pre-Hearing Stmt., and was
in direct contradiction to the earlier positions taken by CSX. (*See* Point II(B)(2) below).

---

[4] Maersk submitted substantial evidence in support of its argument that there were no causally
related stowage problems, but rather, the containers were lost due to problems with the vessels
themselves. Based on the finding that CSX was responsible for stowage, however, the Panel did
not need to determine the cause of the losses. *See* note 6, *infra*.

[5] Shipping containers are loaded one on top of another in "stacks". The "stack weight" refers to
the weight of the containers within the individual stacks. Depending on the weight distribution,
there can be excessive forces on the lashing gear which holds the containers in place, causing the
container stacks to topple.

In an effort to bolster its argument about the parties' supposed intent, CSX produced Mr. Keenan who negotiated the Contract on behalf of CSX. Despite what CSX suggests in its Memorandum, Mr. Keenan did not testify that Clause 7.1 was a partial incorporation or that it shifted responsibility for stowage to Maersk. Indeed, when asked, Mr. Keenan was unable to point to **any** language in the Contract suggesting that responsibility for stowage was shifted to Maersk. (Award p. 9). His view that Maersk should be responsible for stowage was based solely on the fact that Maersk paid for and arranged the loading. (Ex. 6: Keenan Tr. 702:13 – 703:12).[6] He did not endorse counsel for CSX's "partial incorporation" theory.

**D.    The Panel's Award and CSX's Arguments Herein.**

The Panel rejected CSX's argument that Maersk, not CSX, was responsible for any alleged stack weight stowage problems on the vessel. The Panel also rejected CSX's "partial incorporation" theory and interpreted Article 7.1 as a full incorporation of COGSA. The Panel's finding was based in part on CSX's understanding of its responsibilities:

> The ships' officers fully understood that the responsibility for proper stowage was theirs. This obviously included the responsibility for checking stack and tier weights and ensuring that they were within acceptable limits. In fact, CSX's Chief Operating Officer (Mr. Keenan) testified that CSX's policy required the ships' officers to verify stack and tier weights and correct any violations before allowing the vessel to sail. The safety of the vessel and its crew remains paramount so a delay of a few hours, if necessary to check the stevedores' preliminary stow plans, is a requirement that cannot be minimized or ignored.

---

[6] During the arbitration, CSX argued that by paying for the stevedores, Maersk assumed legal responsibility for any stowage problems. The Panel rejected that argument (Award p. 10), and CSX does not pursue it here, apparently recognizing that under the law, payment of stevedoring expenses does not shift responsibility to the paying party. *See, e.g., Associated Metals & Minerals v. M/V Arktis Sky*, 978 F.2d 47, 49 (2d Cir. 1992) (holding that Free In Out Stowed terms, which means shipper pays expenses of loading do not shift liability to the shipper for improper stowage); *Sucrest Corp. v. M/V Jennifer*, 455 F. Supp. 371 (D.Me. 1978) (FIO term understood to fix responsibility for payment of loading and unloading costs, not to transfer risk of loading and stowage).

(Award p. 10).

CSX's current application is based on its "partial incorporation" theory and its position

that the Panel misinterpreted the Contract in finding that COGSA was fully incorporated.  CSX

argues that "this holding, which is the lynchpin of the entire Arbitration Award, is in manifest

disregard of the law." (CSX Memo. 4).[7]

## LEGAL DISCUSSION

### POINT I

### THE BASES FOR VACATING AN AWARD
### ARE SEVERELY LIMITED.

As this Court has recognized, judicial review of arbitration awards is "severely limited so

that the ostensible purpose for resort to arbitration (*i.e.* avoidance of litigation) is not frustrated."

*Asturiana de Zinc Mktg, Inv. v. Austmet*, 20 F.Supp.2d 670, 671 (S.D.N.Y. 1998) (internal

quotations omitted).    Federal courts are consequently required to give arbitrators' decisions

considerable deference and may not review awards for factual or legal errors.  *See, e.g., Banco*

*de Seguros del Estado v. Mut. Marine Office, Inc.,* 344 F.3d 255, 260 (2d Cir. 2003) (awards

should be confirmed if there is even a "barely colorable" justification for the outcome reached);

*GMS    Group,    LLC    v.    Benderson,*    326    F.3d    75,    81    (2d    Cir.    2003);    *Willemijn*

---

[7] CSX urges the Court to vacate the Award based on manifest disregard because of the Panel's interpretation of the Contract, but CSX also suggests that it should be vacated as being "so imperfectly executed" that a definite award was not issued, because the Panel did not decide the precise cause of the containers going overboard. (CSX Memo. p. 20 (citing 9 U.S.C. § 10(a)(4)(c))).  The Award is definite and a complete resolution of the claims presented within the arbitration.  The Panel specifically noted that there was no need to decide why the containers went over the side.  The Panel decided that the containers were not lost as a result of a "peril of the sea", and therefore, the only remaining possible causes were problems with the vessel/lashing equipment or stowage problems.  CSX is clearly responsible for any problems with the vessel/lashing equipment, and since the Panel found CSX responsible for any stowage issues, there was simply no need to reach the issue of why the containers were lost.  Based on the decision, CSX was liable in either event.

*Houdstermaatschappij, BV v. Standard Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir 1997). In fact, a court is not permitted to vacate an arbitration award even if it believes the arbitrators got the decision wrong. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

## A.    An Arbitrator's Interpretation of a Contract is Not Subject to Judicial Review.

The Second Circuit has also repeatedly made clear that the arbitrator's "contractual interpretation (is) not subject to judicial challenge, particularly on (a court's) limited review of whether the arbitrator manifestly disregarded the law." *See Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 214 (2d Cir. 2002); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 25 (2d Cir. 1997) ("Interpretation of ... contract terms is within the province of the arbitrator and will not be overruled simply because we disagree with that interpretation."); *In re Andros Compania Maritima*, 579 F.2d 691, 704 (2d Cir. 1978) ("question of interpretation of agreement is for the arbitrator") (quotation marks omitted); *In re I/S Stavborg*, 500 F.2d 424, 431 (2d Cir. 1974) (misinterpretation of contract not basis for reversing award).

## B.    The Grounds for Overturning an Award are Set Forth by Statute and are Limited.

The federal policy favoring arbitration "erects a high barrier" to overturning an arbitration award. *Robert Lewis Rosen Assocs., Ltd. v. Webb*, No. 07-cv-11403 (RJH), 2008 U.S. Dist. LEXIS 51446, 8-9 (S.D.N.Y. July 7, 2008) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Savino,* No. 06-cv-868 (LAP), 2007 U.S. Dist. LEXIS 23126 (S.D.N.Y. Mar. 23, 2007)). The party seeking to vacate an award thus bears a high burden of proving that the grounds for vacating an award are present. *See Willemijn,* 103 F. 3d at 12.

The grounds for vacating an award are set forth in §10 and §11 of the FAA. Section 10 allows a court to vacate an award when: (1) "the award was procured by corruption, fraud, or undue means"; (2) the arbitrator exhibited "evident partiality" or "corruption"; (3) the arbitrator

was guilty of misconduct; or (4) the arbitrator exceeded his powers." 9 U.S.C. § 10(a)(1) - (4).

Section 11 permits an award to be vacated when there was an evident material miscalculation,

the arbitrators awarded upon a matter not submitted to them or the award is imperfect in form.

In the instant case, CSX's primary contention is that the arbitrator's award was rendered

in "manifest disregard of the law."[8] Relying on dicta in *Wilko v. Swan,* 346 U.S. 427 (1953), the

Second Circuit has held that "manifest disregard of the law" provides an additional judicial basis

for vacatur. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933

(2d Cir. 1986). However, manifest disregard is no longer a ground for vacating an arbitration

award, after *Hall Street Assocs., LLC v. Mattel, Inc.,* 128 S. Ct. 1396 (2008).

**C.    Manifest Disregard is no Longer a Basis For Vacating an Arbitration Award.**

In *Hall*, the Supreme Court held that that the grounds for vacating an award listed in §10

and §11 are "exclusive" and "address egregious departures from the parties' agreed-upon

arbitration." 128 S. Ct. at 1404. Judge Holwell recently and thoroughly addressed the effect of

*Hall* on the viability of the manifest disregard standard. *Webb*, 2008 U.S. Dist. LEXIS 51446.

His opinion is well-reasoned and comprehensive and is thus quoted herein:

> In *Hall Street*, the petitioner had argued that if courts may supplement
> the statutory grounds -- as petitioners believed the Supreme Court had done in
> *Wilko* -- then the parties to the agreement should be allowed to do so as well.
> The Court found that this argument was "too much for *Wilko* to bear" for three
> reasons. First, the Court pointed to the analytical "leap from a supposed
> judicial expansion by interpretation to a private expansion by contract." Next,
> the Court noted that the *Wilko* Court expressly rejected the general review of
> an arbitrator's legal errors sought by petitioners. Finally, the Court found that
> *Wilko*'s reference to "manifest disregard" was ambiguous -- it might name a
> new ground of review, or it might refer to the § 10 grounds collectively or to
> either § 10(a)(3) or § 10(a)(4). Analyzing the Court's prior cases, Justice
> Souter wrote that "(w)e, when speaking as a Court, have merely taken the

---

[8] CSX also mentions that the arbitrators engaged in misconduct and overreached their powers,
but a plain review of their written submission demonstrates that the crux of their argument is
based on the manifest disregard of the law standard. *See, e.g.*, CSX's Table of Contents.

*Wilko* language as we found it, without embellishment, and now that its meaning is implicated, we see no reason to accord it the significance that *Hall Street* urges."

Having held that *Wilko* did not control its determination, the Court then turned to petitioner's claim that the general policy behind the FAA suggested that parties be permitted to supplement the statutory grounds for vacatur. The Court held that "expanding the detailed categories (for modification and vacatur contained in §§ 10 and 11) would rub too much against the grain of the §9 language where provision for judicial confirmation carries no hint of flexibility." Analyzing § 9, the Court found that "(t)here is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation, except when one of the 'prescribed' exceptions applies."

Necessary to *Hall Street's* holding are two related propositions: first, that the FAA's statutory grounds are exclusive, and second, that the Supreme Court has never endorsed manifest disregard as an independent basis for vacatur. Together, these propositions undercut the rationale for the Second Circuit's prior adherence to the manifest disregard standard. As the Second Circuit's traditional understanding of *Wilko* and §10 -- that *Wilko* endorsed manifest disregard and that §10's grounds are not exclusive -- is inconsistent with the basis for the holding in *Hall Street*, the Court finds that the manifest disregard of the law standard is no longer good law.

*Webb*, 2008 U.S. Dist. LEXIS 51446, 11-12 (internal citations omitted).[9]

Maersk submits that in line with the reasoning of Judge Holwell, the manifest disregard of law standard is no longer a basis upon which an award can be vacated. *See Hall*, 128 S.Ct. 1396. Since that is the crux of CSX's argument, its application to vacate the attachment should be denied.

**D.   Even if Available, Use of Manifest Disregard to Vacate an Award is Limited.**

For the reasons outlined above, Maersk maintains that manifest disregard is not a valid basis to overturn an award. Even if manifest disregard were still an available basis, however,

---

[9] CSX mentions *Hall* but suggests that manifest disregard is still a basis for vacating an arbitration award and points to two cases which CSX states applied manifest disregard post *Hall*. CSX Memo. 8. *Hall* was not, however, cited or mentioned in either case cited by CSX and thus it is not even clear that *Hall* was argued or brought to the courts' attention when those cases were decided.

CSX cannot meet the extremely high standards required to overturn an award based on manifest disregard, which is a severely limited doctrine and does not permit a court to review an arbitrator's interpretation of a contract. *Westerbeke*, 304 F.3d at 214 (contractual interpretation not subject to challenge); *Sole Resorts, F.A. de C.V. v. Allure Resorts Mgmt., LLP,* No. 05-cv-0978 (JSR), 2007 U.S. Dist. Lexis 19753 (S.D.N.Y. Feb. 26, 2007) (manifest disregard severely limited).

Manifest disregard is "a doctrine of last resort – its use limited only to those exceedingly rare instances where some egregious impropriety on the part of arbitrators is apparent, but where none of the provisions of the FAA apply." *Duferco Int'l Steel Trading v. T. Kalveness Shipping A/S,* 333 F.3d 383, 389 (2d Cir. 2003). Vacating an award for manifest disregard is consequently a very limited remedy. *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 27 (2d Cir. 2000), *cert. denied,* 531 U.S. 1075 (2001), and requires more than a showing that the arbitrator made an error or misstated the applicable law. *Carte Blanche (Sing.) Pte., Ltd. v. Carte Blanche Int'l Ltd.,* 888 F.2d 260, 265 (2d Cir. 1989).

A party seeking to vacate an award on the basis of manifest disregard of the law carries a "heavy burden" and must demonstrate that the arbitrators knew of a governing legal principle but nevertheless refused to apply it (or ignored it altogether), and that the law not applied (or ignored) by the arbitrators was (a) well defined, (b) explicit and (c) clearly applicable to the case. *See Banco de Seguros,* 344 F.3d at 260; *GMS Group,* 326 F.3d at 81. However, as the Supreme Court has emphasized, as long as the arbitrator is even arguably construing the contract, "that a court is convinced that he committed serious error does not suffice to overturn his decision.... [Courts] do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing the decisions of lower courts." *Misco,* 484 U.S. at 38. Consequently, if there

is at least a "barely colorable justification for the outcome reached" by the arbitrators, the arbitration award cannot be vacated under the manifest disregard standard. *Banco de Seguros,* 344 F. 3d at 260; *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 71 (2d Cir. 2003); *Duferco Int'l Steel Trading,* 333 F. 3d at 391.

**POINT II**

**THE PANEL'S AWARD WAS CORRECT, CONSISTENT WITH
EXISTING APPLICABLE PRECEDENT, AND WAS NOT IN
"MANIFEST DISREGARD" OF THE LAW.**

In its Memorandum, the legal principle which CSX has identified as the basis for its application is that parties to a charter are free to incorporate COGSA either generally or partially. (*See* CSX Memo. pp. 10-15). CSX then asserts that the Panel ignored the law on partial incorporation because they interpreted the Contract as incorporating COGSA in its entirety.[10] CSX's argument is defective for several reasons and certainly does not satisfy the heavy burden of showing a manifest disregard of the law.

**A.     The Arbitrators' Interpretation of the Contract is Not Subject to Judicial Review.**

As explained above, the arbitrators' "contractual interpretation (is) not subject to judicial challenge, particularly on (a court's) limited review of whether the arbitrator manifestly disregarded the law." *See Westerbeke*, 304 F.3d at 214. Yet, this is precisely what CSX is asking this Court to do. Notably, CSX did not point the Court to any of the Second Circuit authority stating that an arbitrator's contract interpretation is not subject to judicial review. That controlling precedent precludes the very argument which CSX now advances.

---

[10] There is no dispute that under COGSA and the general maritime law, a vessel owner, like CSX, has a non-delegable duty to load, stow and discharge the cargo and bears the risks and consequences for failing to do so. *See, e.g., M/T Stolt Lion*, 617 F.2d 907 (2d Cir. 1980). This is why CSX argued its partial incorporation theory in the hopes of escaping their duties as owner.

**B.    Even if the Panel's Contract Interpretation was Subject to Judicial Review, the Panel did not Ignore or Misapply the Law of Partial Incorporation.**

CSX's suggestion that the Panel ignored the law of partial incorporation is simply not correct. (*See* CSX Memo. pp. 20-24). The Panel specifically recognized that COGSA is not applicable as a matter of law to this private contract. The Panel also acknowledged that the parties to a private contract are free to incorporate COGSA and are free to modify the terms of COGSA, shifting responsibilities as they wish. (*See* Award pp. 8-9). (Indeed, it is commonplace for private contracts which incorporate COGSA to contain provisions which shift responsibility for stowage from the carrier to charterer. The NYPE charter party form is the classic example.) The Panel, however, rejected CSX's "partial incorporation" argument and interpreted this Contract as one where the parties fully incorporated COGSA. There is more than a "barely colorable justification" for this interpretation.

Article 7.1 of the Contract provides that "The carriage, custody and care of the goods hereunder shall be subject to ... COGSA." (Ex. 1). The Panel construed that language as a general incorporation of COGSA which places responsibility for stowage on the carrier (in this case, CSX) and provides:

> The Carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried.

49 Stat. 1207 (1936), COGSA §3(2).

CSX does not argue that there is express language in this Contract which shifts responsibility for stowage from CSX to Maersk. Instead, the sole basis on which CSX grounds its "partial incorporation" theory is the absence of the words "loading" or "stowing" in the COGSA incorporation clause. CSX argues that because the incorporation language only refers to "carriage, custody and care", this demonstrates that the parties clearly intended for Maersk to

be legally responsible for stowage. The Panel rejected CSX's argument and construed the phrase "the carriage, custody and care of the goods hereunder shall be subject to…. COGSA" to be a general incorporation of COGSA. (Award pp. 8-9).[11]

The Panel's construction of the Contract cannot be considered "manifest disregard" as it is consistent with the wealth of decisions finding valid, general incorporations of COGSA with less inclusive incorporating language than is contained in this Contract. *See, e.g., The Jo Anne*, SMA No. 3026 (N.Y. Arb. 1993) (phrase "the <u>carriage</u> of cargo …shall be subject to…" held to be sufficient incorporation of COGSA) (emphasis added); *see also In Re T/B Florida*, SMA No. 3628 (N.Y. Arb. 5/25/00) (citing *Phillips 66 Co. v. Marine Specialties Co.*, SMA No. 3026 (N.Y. Arb. 1993)); *California and Hawaiian S. Co. v. Columbia S.S. Co., Inc.*, 391 F.Supp. 894, 897 (E.D. La. 1972), *aff'd* 510 F.2d 542 (5th Cir. 1975); *Horn v. Cia de Navigacion Fruco, S.A.*, 404 F.2d 422 (5th Cir. 1968), *cert. denied*, 394 U.S. 943 (1969); *The Venture*, SMA No. 2681 (N.Y. Arb. 1990)).[12]

---

[11] CSX intimates that the Panel ignored the law which provides that the parties must clearly indicate their intention to incorporate COGSA (CSX Memo. pp. 14-15) and thereby suggests that there was no such clear incorporation here. Those cases deal with whether COGSA is incorporated at all. Here, the Contract clearly states that it "shall be subject to COGSA". (Ex. 1: Clause 7.1).

[12] CSX argues that the Panel's interpretation is in conflict with *Nichimen v. M/V Farland*, 462 F.2d 319, 330 (2d Cir. 1972). (CSX Memo. p. 18). This argument is entirely disingenuous. To begin, CSX does not tell the Court that *M/V Farland* recognized that "absent any special provision or circumstance [in a charter party], the duty to load, stow, and discharge cargo – and the consequences for failing to do so properly – fall upon the ship and her owners." 462 F.2d at 330. More significantly, CSX knows, yet neglects to advise the Court, that *M/V Farland* involved the well-known clause 8 of the NYPE charter party form. Clause 8 expressly states that "charterers are to load, stow, and trim the cargo at their expense." The wording of Clause 8 has been the subject of judicial consideration, which has concluded that to some extent clause 8 shifts responsibility for stowage to the charterer. Here, there is no clause in the Contract that even remotely states what clause 8 states. The absence of the words "loading" and "stowing" in the incorporation language hardly amounts to the same type of express statement in clause 8 or the "special provision" required to excuse CSX from its duty to ensure proper stowage.

There is simply no language in the Contract which can even be arguably read to suggest that Maersk is responsible for stowage. As the Panel found, if the parties intended to shift responsibility from CSX to Maersk, it would have been a simple matter to include such a clause in the Contract as is commonly done. Yet, "[t]here is no clause or term in the Contract remotely expressing an intention to shift responsibility." (Award p. 9).[13]  Indeed, the remaining language of the Contract and the understanding of the parties comports with the Panel's interpretation.

### 1.    *Panel's interpretation of the Contract is consistent with the remaining language in the Contract which imposes responsibility for stowage on CSX.*

A fair review of the Contract shows that the parties intended CSX to be responsible for stowage.  The contract contemplates that Maersk, as the bill of lading issuer, would handle any cargo claims and then present claims for reimbursement to CSX.  Article 7.8 provides that Maersk was entitled to handle any such claims without prejudice to "...Maersk's rights of recovery as against CSX hereunder." (CSX Ex. 1, Article 7.8)  CSX points out that Maersk issued bills of lading to its customers which incorporated COGSA in full. (CSX Memo. p. 2). Yet, CSX fails to mention clause 7.2 of the Contract which provides as follows:

> As between the parties, CSX shall have the same rights, defenses, limitations and exoneration as Maersk has to or against its shippers in relations to goods transported under this agreement . . .

(*See* Ex. 1, clause 7.2).

---

[13] CSX criticizes the Panel for citing in footnote 3 of the Award to a section of *Voyage Charters* addressing what is needed in a charter to shift the common law responsibility of stowage from an owner to a charterer.  (CSX Memo. pp. 17-19).  CSX argues that the Panel "went beyond the scope of its authority" because that section of *Voyage Charters* cites to British law.  Again, CSX is being less than genuine. U.S. law stands for the exact same propositions referenced by the Panel with footnote 3.  U.S. law also requires a "special provision" in a charter party before the owner is free from the duty and risk of proper stowage, and also recognizes that payment terms such as FIOS without additional language are insufficient to constitute the type of special provision needed. *See M/V Arktis Sky*, 978 F.2d at 49; *M/V Farland*, 462 F.2d at 330.

Under that provision, in the context of a claim by Maersk for reimbursement, CSX has the *same* rights and defenses against Maersk that Maersk has against its customers. Maersk has no defense against its customers based on improper stowage, and similarly, CSX has no such defense against Maersk. Thus, the Contract language itself places responsibility for stowage on CSX.

It is also noteworthy that the section of the Contract dealing with liabilities and indemnities (Article 7) specifies that certain responsibilities fell on Maersk (*see e.g.* CSX Ex. 1, Article 7.3 holding Maersk responsible for damages arising out of the issuance of bills of lading). When the parties wanted to allocate responsibility to Maersk, they did so in the Contract, but there was no such allocation of responsibility for stowage to Maersk.

### 2.    *The Panel's interpretation is consistent with the understanding of the parties.*

The understanding of the parties is reflected in the positions taken by CSX prior to lawyer involvement in this case and in the testimony of the crew and CSX management. Each is discussed below.

First, CSX's "partial incorporation" argument was raised for the first time after Mr. Eric Danoff was retained as additional counsel for CSX in 2005. Yet, a representative of CSX had earlier summarized CSX's position and understanding of the agreement as follows:

> We believe that the Maersk/CSX space charter should be considered a contract for private carriage which incorporates COGSA. It is our view that as Maersk arranged and paid for the loading, Maersk should bear the risks and consequences of improper loading....

(Ex. F: Tsukamoto Decl. ¶5). This shows that CSX understood and believed that the parties' dispute was governed by COGSA, which is exactly how the Panel interpreted the Contract.[14]

Secondly, the testimony from the vessels' crews and CSX's Mr. Keenan confirmed that CSX understood that it remained responsible for checking the stack and tier weights in the container stow before sailing. As the Panel found,

> The ships' officers fully understood that the responsibility for proper stowage was theirs. This obviously included the responsibility for checking stack and tier weights and ensuring that they were within acceptable limits.

(Award p. 10). This factual finding must be accepted for purposes of the current application, *Westerbeke*, 304 F.3d at 213, and it was, in any event, aptly supported by the testimony of CSX's Chief Mate McDorr and Chief Mate Schaeffer. (Arbitration Ex. 60: Schaeffer Depo. pp. 13, 49–52; and McDorr Tr. 350:10 – 351:14).

Furthermore, CSX's Mr. Keenan admitted that CSX was aware of its responsibility for stowage. He reluctantly admitted on cross-examination that CSX's policy required ship's officers to obtain the information necessary to determine if there were stack or tier weight violations and correct any such violations before allowing the vessel to sail. In discussing the Chief Mate's responsibilities, Mr. Keenan testified as follows:

> Q:    His primary responsibility is the safety of the ship; is it not?
> A:    That is correct.
>
> Q:    Would you agree with me that it is imprudent to sail the ship unless a problem has been remedied with respect to stack weights or tier weights?
> A:    If he is aware of it.
>
> Q:    That is my question. If he is aware of it, isn't it true that CSX at the time and Horizon now expects him to change it and make sure that it is correct before the ship sails?

---

[14] The Panel saw the "partial incorporation" argument for what it was – an after-the-fact, lawyer-generated argument that was contrary to CSX's earlier position regarding the meaning of the Contract.

A:    He would have to direct someone to change it.

Q:    Right. And he would have to make sure that that change is, in fact, carried out before the vessel sails; is that correct?

A:    That is correct.

Q:    If the information is not available, as you have posited, isn't it his obligation to make sure that he gets the information so that he is sure that everything is proper before the vessel sails?

A:    That is our preference.

Q:    That is your policy, isn't it?

A:    Yes.

(Ex. 6: Keenan Tr. 707:25 – 709:3).

In summary, CSX's argument – that the Panel manifestly disregarded the law on partial incorporation– fails because, similar to what this Court has already recognized in another case, although CSX argues that parties may partially incorporate COGSA under the law, "there is no question that an arbitrator applying the legal principles that [CSX] urges could, as a factual and evidentiary matter, have declined to find that" the incorporation here was partial. *Asturiana,*. 20 F. 2d at 672. The Panel looked at the Contract and concluded that the absence of the words loading and stowing was not enough to support the construction which CSX advanced. Examining the entire Contract and the practices of the parties, the Panel rejected CSX's argument and concluded that the Contract generally incorporated COGSA. The Panel's rejection of one interpretation of the law and the facts in favor of another is quite different from willfully flouting the law. *See Westerbeke,* 304 F. 3d at 217; *GMS Group,* 326 F. 3d at 82-83. CSX has thus not demonstrated that the Panel manifestly disregarded the law.

## POINT III

## CSX'S ARGUMENT THAT THE PANEL MISAPPLIED THE LAW ON THE BURDENS OF PROOF IS INCORRECT AND LEGALLY IRRELEVANT.

In addition to arguing that the Panel misapplied the law because it did not adopt CSX's proffered interpretation of the Contract, CSX argues that the Panel misapplied the law in finding that the general incorporation of COGSA included its well-known shifting burdens of proof. (CSX Memo. pp. 19-20). CSX argues that because the Contract did not refer specifically to "burden of proof", the Panel manifestly disregarded the law by applying those burdens. CSX's argument is, once again, less than genuine.

As CSX is well aware, the majority rule is that where COGSA is incorporated by contract all the judicial interpretations of COGSA, including the COGSA burdens of proof are applicable. *See, e.g., Shell Oil Co. v. M/T Gilda*, 790 F.2d 1209, 1213 (5th Cir. 1986); *Kerr-McGee Refining Corp. v. M/V La Libertad*, 529 F. Supp. 78, 82 (S.D.N.Y. 1981); *In Re T/B Florida*, SMA No. 3628 (N.Y. Arb. 5/25/00) (citing *Phillips 66 Co. v. Marine Specialties Co.*, SMA No. 3026 (N.Y. Arb. 1993); *California and Hawaiian S. Co. v. Columbia S.S. Co., Inc.*, 391 F.Supp. 894, 897 (E.D. La. 1972), *aff'd* 510 F.2d 542 (5th Cir. 1975); *Horn v. Cia de Navigacion Fruco, S.A.*, 404 F.2d 422 (5th Cir. 1968); *The Venture*, SMA No. 2681 (N.Y. Arb. 1990)); *see also Rio Energy Int'l Inc. v. Moran Towing of Texas, Inc.*, SMA No. 3628 (N.Y. Arb. 2000); *The Jo Anne*, SMA No. 3026 (N.Y. Arb. 1993); *The Maastrom*, SMA No. 2944 (N.Y. Arb. 1993).

As recognized in *Rio Energy Int'l*, SMA No. 3628, when COGSA is incorporated into a charter party, the shifting burdens of proof under COGSA apply. The panel explained:

> The foregoing reasoning provides a sound rationale for concluding, as have other authorities cited supra, that charterer's establishment of a prima facie case (here by proving delivery to the vessel in good condition / out-turn contaminated) puts the burden of explanation on the shipowner. That seems to

18

be only common sense, as the shipowner is the party most likely to possess any such evidence, particularly as to subsection 1304(2)(q) or other exceptions concerning the vessel. It would be at least incongruous [for parties] to incorporate COGSA without any recognition of the relevant court decisions in the light of which COGSA was enacted and judicial interpretation of COGSA itself. To do so would only inject unnecessary and unjustifiable uncertainty as to the primary stage of burden of proof which Intercontinental aptly describes as "partly integral to COGSA and partly the result of judicial gloss."

*Id.* (internal citations omitted).

CSX does not point to a single case which has held that the general incorporation of COGSA does not bring its burdens of proof.[15] CSX instead argues that the dissenting arbitrator, Mr. Arnold, correctly found that the COGSA burdens of proof did not apply, notwithstanding the incorporation of COGSA. Mr. Arnold has espoused this view for years, but as demonstrated by the awards cited above, he is clearly the minority view. Consequently, at best, CSX can establish a minority view that supports its position, but it cannot be legitimately argued that the Panel's decision is in "manifest disregard" when its ruling is in accord with the overwhelming majority of precedent on the topic.

Finally, whether or not the Panel applied the correct burdens of proof is legally irrelevant. The Panel found that the containers were not lost over the side of the vessel based on a "peril of the sea". Therefore, the only possible causes were problems with the vessel itself or problems with stowage. Whether the containers were lost as a result of unseaworthy conditions onboard the vessel or problems with stowage, the result is the same. CSX is clearly responsible for unseaworthy conditions onboard the vessel, and the Panel found that CSX is responsible for any

---

[15] In support of its argument, CSX cites the Second Circuit's decision in *Associated Metals and Minerals Corp. v. SS Jasmine*, 983 F.2d 410 (2d Cir. 1993). CSX's reliance on *SS Jasmine* is misplaced. Unlike here, the charter party in *SS JAMINE* did not incorporate COGSA, and therefore, the court correctly held that the normal private contract burdens of proof were applicable.

problems with respect to stowage. Thus, the burdens of proof are irrelevant, since CSX is liable under either possible cause.

## POINT IV

### MAERSK IS ENTITLED TO CONFIRMATION OF THE AWARD.

Under the terms of 9 U.S.C. §9, a Court "must" confirm an arbitration award "unless" it is vacated, modified, or corrected, "as prescribed" in §§10 and 11. 9 U.S.C. §9; *Hall*, 128 S. Ct. at 1401. The party resisting enforcement has the burden of proving that one of the grounds provided in §§10 and 11 exist. *See, infra,* cases cited at Point II above. As explained above, CSX's argument that the arbitration award should be vacated is entirely without merit and in fact borders on frivolous. CSX has not sustained its burden of proof. Accordingly, Maersk is entitled to have the Award confirmed as a judgment of this Court.

## CONCLUSION

Based upon the foregoing, CSX's application to vacate the Award should be denied and the Award confirmed as a judgment of this Court.

Dated: July 11, 2008

Respectfully submitted,

/s/ Wayne D. Meehan
Wayne D. Meehan (WM 9102)
Gina M. Venezia (GV 1551)
FREEHILL, HOGAN & MAHAR, LLP
80 Pine St.
New York, NY  10005
Tel: (212) 425-1900
Fax: (212) 425-1905
*Attorneys for Respondent Maersk*

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will automatically send email notification of such filing to all attorneys of record. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below service list in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notice of Electronic Filing.

**VIA CM/ECF:**

> Vincent M. DeOrchis
> M.E. DeOrchis
> DeOrchis & Partners
> 61 Broadway - 26th Floor
> New York, N.Y. 10006

/s/ Wayne D. Meehan
Wayne D. Meehan