UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HORIZON LINES, LLC, f/k/a
CSX LINES, LLC,

                        Petitioner,

           -against-

A.P. Moller, Managing Owner of
MAERSK-SEALAND, INC.,

                       Respondent.
------------------------------------------------------------X

08 Civ. 3982 (JSR)

CIVIL ACTION

## PETITIONER'S REPLY BRIEF AND BRIEF IN OPPOSITION TO MAERSK'S MOTION TO CONFIRM THE AWARD

DeORCHIS & PARTNERS, LLP
Attorneys for Petitioner, CSX Lines, LLC
61 Broadway, 26th Floor
New York, NY 10006-2802
(212) 344-4700

Vincent M. DeOrchis
John A. Orzel
M.E. De Orchis
Justin Waytowich
  *-of Counsel-*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ................................................................................................................... 1

POINT I ................................................................................................................................... 1

    THE ARBITRATORS REWROTE A PRIVATE CONTRACT OF
    CARRIAGE WHICH EXCEEDED THEIR POWERS ..................................................... 1

POINT II .................................................................................................................................. 6

    IN ANY EVENT, EVEN IF COGSA APPLIED IN ITS ENTIRETY,
    CSX SHOULD NOT BE LIABLE FOR THE NEGLIGENCE OF
    MAERSK'S STEVEDORES ............................................................................................ 6

POINT III ................................................................................................................................. 8

    THE SUPREME COURT'S DECISION IN *HALL STREET* DOES
    NOT DICTATE THAT THE SECOND CIRCUIT'S DOCTRINE OF
    "MANIFEST DISREGARD" IS TERMINATED ............................................................ 8

CONCLUSION ...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Hall Street Assoc's. LLC v. Mattel, Inc.*,
   128 S. Ct. 1396 (2008) .................................................................. 8, 9, 10

*Nichimen Company, Inc. v. m/v Farland*,
   462 F. 2d 319 (2d Cir. 1972) .................................................................. 5

*Orsen Assoc. Ltd. v. William Webb*,
   No. 07 Civ. 11403 (RJH), 2008 U.S. Dist. LEXIS 51446 ........................ 9

*Sigri Carbon Corp. v. Lykes Bros. S.S. Co.*,
   655 F. Supp. 1435 (W.D. Ky. 1987) .................................................... 5, 6

*Sucrest Corp. v. M/V JENNIFER*,
   455 F. Supp. 371 (D. Me. 1978) ............................................................ 4

**Statutes**

46 U.S.C. § 1300 .......................................................................................... 2

46 U.S.C. § 1305 .......................................................................................... 2

46 U.S.C. Appx. § 1304(2)(i), ...................................................................... 6

46 U.S.C. § 1304(2)(a)(i) and (q) ................................................................. 6

9 U.S.C. § 1, *et seq.* .................................................................................... 9

9 U.S.C. §§ 10 and 11 .................................................................................. 9

9 U.S.C. § 10(a)(3) or (4) ........................................................................... 10

9 U.S.C. § 10(1)(4) ..................................................................................... 10

9 U.S.C. § 10(a)(3) ..................................................................................... 11

## INTRODUCTION

Petitioner Horizon Lines, LLC (hereinafter "CSX") submits this Memorandum in reply to the opposition filed by A.P. Moller A/S (hereinafter "Maersk") to the motion by CSX to vacate the arbitration award dated January 30, 2008 ("Award"), and in opposition to Maersk's cross-motion to confirm the Award.

## POINT I

### THE ARBITRATORS REWROTE A PRIVATE CONTRACT OF CARRIAGE WHICH EXCEEDED THEIR POWERS

When the dust settles, this case will be closely looked at by the maritime community for the principle of whether the law will respect the commercially important difference between private contracts of charter and common carriage. The difference is significant, because private contracts assume the equal bargaining power of commercial entities who do not need to be protected by the "public policy" elements of common carriage.

The key issue in this case is not one of an "interpretation" of a charter. Rather, it is whether two experienced maritime arbitrators, with law school training, can add duties to a private contractual agreement between carriers that are specifically omitted from the contract, and thereby convert the contract from private to common carriage. The problem is not just "disregarding the concept of partial incorporation" as characterized by Maersk. It is more than that. The majority of the panel created duties and burdens encompassing the full scope of COGSA that are not supported by the clear and limited language of the space charter agreement.

The question that the majority never confronted in its Award is why Article 7.1 designated only the duties of "carriage, custody and care," if indeed it meant more? This is not, as Maersk suggests, simply an issue of "interpretation," nor is it a "rejection of one interpretation in favor of another." (Maersk Brief, p. 17). The majority circumvented any mention of the case law in respect to "partial incorporation" (See CSX main brief, Point IV), and completely avoided

any analysis of the legal issue of partial incorporation, because a holding of "common carriage" under COGSA meant that the majority did not have to make a finding of causation as to why only Maersk containers loaded by Maersk stevedores fell overboard from the three vessels.

The majority of the panel went far beyond the scope of its authority by rewriting the contract to infer the missing words "load," "stow" and "discharge" into Article 7.1 of the private contract. (Exh. 1). By arbitrarily supplementing the words "carriage, care for and keep" with the duties "load," "stow" and "discharge," the panel converted CSX to a *common* carrier status, and a whole new set of rules on burdens of proof applicable to common carriers. COGSA was enacted to apply to carriage under bills of lading, 46 U.S.C. § 1300, and not to charterparties. 46 U.S.C. § 1305.

Contrary to the majority's declaration that "there is no clause or term in the Contract remotely expressing an intention to shift this responsibility", the clauses at the very outset of the Space Charter made it clear that CSX was *not* to be treated as a "common carrier":

> Article 4. "Maersk represents that is an ocean *common* carrier in the United States foreign commerce, and CSX represents it is a *water* carrier in the US…. (Exh. 1, p. 1) (emphasis supplied)
>
> Article 4. "…*the parties understand and agree that…. CSX will not offer common carrier service* in the foreign portion of the Trade, i.e. the portion of the trade between the United States ports and …Hong Kong and Kaohsiung". (Exh. 1, p.2) (emphasis supplied)
>
> Article 5.1.6  "…it is agreed that during the terms of this agreement, *CSX shall not issue a bill of lading, transport cargo, otherwise act as an ocean common carrier*, or otherwise compete with Maersk's …international line business…."(Exh. 1, p.4) (emphasis supplied)

The majority had no authority, considering the evidence, to render a finding that COGSA was generally incorporated into the Space Charter, thereby making CSX subject to "all the terms and conditions of COGSA, including its burdens of proof and CSX's non-delegable duty of

2

proper stowage." (Exh. 2, p. 8). This result was entirely contrary to the stated purpose and economic basis of the Space Charter which was to insure that CSX did not become a common carrier.

Mr. Keenan, the Chief Operating Officer from CSX who testified before the panel, and whose testimony was not rebutted, provided the only evidence on the intent of the parties in respect to the Space Charter. His sworn testimony is clear evidence that the private Space Charter provided significant consideration for shifting the responsibility of loading and stowage to Maersk and its stevedores:

> A. "We basically wholesale-the term we use is we *wholesale the ship* to Maersk....As a matter of fact, this deal prohibited us from issuing bills of lading in the international trade lane...Maersk is the one responsible for issuing those bills of lading. *We have the ship that basically moves the cargo and that is the way that we structured the agreement.*"(Exh. 6, Keenan, p. 668) (emphasis supplied)
>
> \*\*\*
>
> Q. That rate that is mentioned in Article 5, clause 5.1.1 of $486.20, you said that was a wholesale price?
> A. Yes. We felt it was a very favorable rate.
> Q. Did that reflect the fact that the shipowner was not going to have terminal charges or wasn't going to have stevedore expense; is that all referenced in this rate?
> A. That is correct. That is the rate that is for the per FEW *slot onboard* vessel" (Exh. 6, Keenan, p. 677) (emphasis supplied)
>
> \*\*\*
>
> A. "...there is *no lift fee* that CSX Lines at that time would pay."(Exh. 6, Keenan, p. 682) (emphasis supplied)
>
> \*\*\*
>
> Q. Who was going to do the loading and securing of containers at Kaohsiung?
> A. That was the terminal operator. That was Maersk, APMT.
> Q. Is that also true of Kobe?
> A. Yes, that is. (Exh. 6, Keenan, p. 683)

In sum, there was a substantial amount of evidence from Mr. Keenan, all unrebutted, establishing that (1) the intent of the parties was to place the burden and coastal loading and stowing on Maersk, (2) that Maersk, to save money, would pay its own stevedoring subsidiaries for the task of loading and stowing the cargo, and (3) that there was economic consideration given by CSX for shifting the obligation duty to load and stow to Maersk, because Maersk only paid a "wholesale" charter rate which was based on CSX just carrying the cargo.

Maersk relies on cases involving FIOS clauses to argue that merely paying for the stevedore does not shift liability. (Maersk Brief, p. 14.) CSX agrees that payment alone may not be enough. However, there was more to the arrangement between Maersk and CSX than just the stevedoring charge. First, CSX was paid substantially less freight rate than had it been responsible for loading and stowing the cargo. Second, the stevedores that were used to load and stow the cargo were subsidiaries of Maersk.

Maersk relies upon *Sucrest Corp. v. M/V JENNIFER*, 455 F. Supp. 371 (D. Me. 1978). (Maersk Brief, p. 5, fn. 6). In that case, which involved the issue of proper stowage of a cargo of bulk raw sugar, the Court went out of its way to explain that:

> ...the FIO term is generally not understood to comprehend stowage and trim, but only loading and unloading costs. *If the responsibility for stowage and trim are to be transferred to the charterer, the charter party contains what the industry calls a FIOST (Free In and Out Stowed, Trimmed) clause*, similar to that written into the charter party at issue in the *Nichimen* case and not present in the (subject) agreement....(emphasis supplied)

*Id.* at 381, fn.17.

Since Maersk paid to arrange for the containers to be loaded and secured into the "slot onboard" the vessels, the contractual arrangement between Maresk and CSX would be more like the FIOST situation, rather than the FIOS situation proposed by Maersk. (See, Keenan, p. 699). Maersk's stevedores did more than lift the containers on to the vessels, they planned where those

4

containers would go on the vessels, lifted them on to the vessels, and applied the lashing equipment to those containers, which secured them to the deck of the vessel.

Moreover, the court in *Sucrest* noted that one also had to look at whose stevedore assumed responsibility for the loading and stowing. In that case, they noted, the stevedore was working under the orders of the charterer. *Id.* at 381, fn. 17. See also *Nichimen Company, Inc. v. m/v Farland,* 462 F. 2d, 319, 330 (2d Cir. 1972); *Sigri Carbon Corp. v. Lykes Bros. SS Co.*, 655 F. Supp. 1435 (W.D. Ky. 1987) (FIOS clause shifted the responsibility for loading cargo aboard a barge to the shipper who engaged the stevedore and controlled its performance).

Mr. Carbone, the Captain of the m/v HAWAII, one of the three vessels involved in the arbitration, testified before the panel that the Maersk stevedores made many changes to the loading plans "because they had not finished [loading the] cargo and were falling behind on what they thought was going to be the loading sequence" (Carbone, p. 731); that the stow plans created by Maersk stevedores were not accurate because they were in a "last minute scramble" (Carbone, p. 733); that the Maersk stevedores were still trying to load cargo within 14 minutes of sailing time (Carbone p. 732); and Maersk stevedores failed to give the ship's officers the stack weights. (Carbone p. 846). Moreover, he testified that the Maersk computer system to calculate was not compatible with the computers that were on the CSX vessels.

There is no basis to hold CSX responsible for the actions of stevedores who are paid by Maersk and act under the directions and corporate ownership of Maersk. The panel acknowledged that "Maersk's APM Terminal stevedores loaded its cargo at Kaohsiung. Maersk paid the stevedoring charges for the loading of its containers." In fact, Maersk "paid and arranged" (Keenan, p. 703) its containers to be "loaded, stowed and secured by its subsidiary." (Exh. 2, p. 7). Despite this finding, and contrary to the law, the panel shifted the responsibility for loading and stowage onto CSX although it was not paid for those services.

5

## POINT II

### IN ANY EVENT, EVEN IF COGSA APPLIED IN ITS ENTIRETY, CSX SHOULD NOT BE LIABLE FOR THE NEGLIGENCE OF MAERSK'S STEVEDORES

Maersk argues that even if the panel failed to make a finding of causation, "the only possible causes were problems with the vessel itself or problems with stowage", (Maersk Brief, p. 19). Maersk goes on to argue that "either way," CSX is liable. This is incorrect. Even assuming, *arguendo,* that COGSA was incorporated entirely into the Space Charter, Maersk fails to point out that CSX may be entitled to the defenses of "Act or omission of the Shipper or its agent," or Clause "Q," under the COGSA, 46 U.S.C. § 1304 (2)(a)(i) and (q).

In *Sigri Carbon Corp v. Lykes Bros. S.S. Co.*, 655 F. Supp. 1435 (W.D. Ky. 1987), the court not only provides an in depth look at the meaning of FIOS clauses, but goes on to review the significant cases in that area. The decision involved a shipment subject to COGSA, but under an FIOS arrangement in which the ocean carrier played no role in loading or stowing the cargo on a barge. *Id.* at 1436. The court agreed that "...having determined that a carrier is not responsible for improper stowage undertaken by a shipper pursuant to a FIOS term in a bill of lading, the Court [found] the electrodes were damaged as a result of an [a]ct or omission of the shipper or owner of the goods, his agent or representative; and [held] that under 46 U.S.C. Appx. § 1304(2)(i), neither the carrier nor the vessel are liable for the consignee's loss." *Id.* at 1439-41.

The Court in *Sigri,* specifically examined the issue of the non-delegable duty of stowing cargo under COGSA, which, contrary to Maersk's arguments, rejected the concept when the charterer uses its own stevedore:

> Although several courts "have suggested somewhat casually in dicta that carriers have a non-delegable duty to stow cargo" Sumitomo, 632 F. Supp. At 836 (citations omitted), the Court can find no support for the proposition that a carrier remains responsible for cargo damage caused by improper stowage performed by persons engaged by the shipper and over whom the carrier exercises no control".

6

*Id.* at 1438.

The Court went on to state that:

> When directly addressing a carrier's responsibility for stowage performed by a shipper, leading authorities agree that the carrier is protected:
>
>> Stowage is the responsibility of the carrier.... The carrier is protected, however, if the shipper does the stowage and if the stowage is improper and causes damage to that cargo. If a claim is made by the shipper, the carrier may set up the shipper's negligence as a valid defense under art. 4(2) [46 U.S.C. § 1303(2)], which reads: "Neither the carrier nor the shipper shall be responsible for loss or damage arising or resulting from: (i) Act or omission of the shipper or the owner of the goods, his agent or representative.
>
> TETLEY, MARINE CARGO CLAIMS 264 (2d ed. 19xx); *see also* 2A BENEDICT ON ADMIRALTY § 94 (6th Ed. 1977). A thorough judicial analysis of this exception to a carrier's so-called non-delegable duty to stow cargo is found in *Sumitomo Corp. of America v. M/V SIE KIM*, 632 F.Supp. 824, 836-839 (S.D.N.Y. 1985).

The present case is much closer to *Possehl, Inc. and Allianz Versicherungs AG v. Shanghai Hia Xing Shipping*, No. 00 Civ. 5157, 2001 U.S. Dist. LEXIS 2169 (S.D.N.Y. March 1, 2001), in which Judge Sweet denied a motion to vacate an arbitration award involving a charter which was governed by COGSA. Under that charter, the charterers were to pay for the cost of loading and stowing cargo aboard the vessel at the load port. *Id* at *10-*15. Charterers argued that the arbitrators manifestly disregarded the law because they ignored the "non-delegable duty of an ocean carrier to carefully load and discharge cargo under COGSA." *Id.* at *13. Judge Sweet responded that although the carrier's duty may be non-delegable,

> COGSA also provides for certain affirmative defenses which may be asserted by the shipper once the carrier has established a *prima facie* case. *See* 978 F.2d at 51; *see also Tubacex, Inc. v. M/V Risan*, 45 F.d 951, 954-56 (5th Cir. 1995) (discussing COGSA defenses available to carriers and relying in part on *Arktis Sky* analysis). Among those defenses is the one provided by § 1304(2)(i), which states:

7

> Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from [an] act or [*15] omission of the shipper or owner of the goods, his agent or representative.
>
> 46 U.S.C. § 1304(2)(i); *see Tubacex,* 45 F.3d at 955-56; *Arktis Sky,* 978 F.2d at 51-52 and n.3. This affirmative defense is available even where the damage was caused during loading and stowing, despite the carrier's non-delegable duty to exercise due diligence with respect to those activities.

*Id.* at *14-*15.

Judge Sweet was confronted with a "mirror image" of the case before this Honorable Court. The significant difference is that the arbitration panel in the case before Judge Sweet concluded that although COGSA applied to the carriage of the goods, the cause of loss to the cargo was due to "the unavoidable consequence of the faulty stowage performed by the shipper's" stevedore. *Id.* at *19. Hence, Maersk is incorrect in arguing that if the cause of the containers falling overboard from the three vessels was due to improper stowage, liability must be assessed under COGSA against CSX. Indeed, CSX filed a counterclaim within the arbitration proceeding for the damage caused to its vessels as a result of the containers falling overboard due to improper stowage by Maersk's stevedores. The majority failed to provide that CSX should be reimbursed for those losses.

## POINT III

### THE SUPREME COURT'S DECISION IN *HALL STREET* DOES NOT DICTATE THAT THE SECOND CIRCUIT'S DOCTRINE OF "MANIFEST DISREGARD" IS NO LONGER VALID

Maersk states at page 8 of its Memorandum that, "However, manifest disregard is no longer a ground for vacating an arbitration award after *Hall Street Assoc's., LLC v. Mattel, Inc.,* 128 S. Ct. 1396 (2008)."

All that the Supreme Court ruled in *Hall* was that private parties cannot *by contract* expand the grounds for vacating an award beyond the four expressly listed in the Federal

8

Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, which are considered the exclusive grounds for parties using the FAA summary review process. The Court expressly left open the validity of agreements outside the FAA, and other possible avenues for judicial enforcement of awards. "Manifest disregard of the law" has been so long relied upon judicial decisions in this Circuit as another basis for overturning awards, that it should be viewed as the common law of this Circuit.

In Point C, page 8 of Maersk's Memorandum of Law, it argues that "Manifest Disregard is no longer a basis for vacating an arbitration award" after the Supreme Court's decision in *Hall Street Assoc's. LLC v. Mattel, Inc.*, 128 S. Ct. 1396 (2008). It quotes Judge Howell's recent opinion in *Orsen Assoc. Ltd. v. William Webb*, 07 Civ. 11403 (RJH), 2008 U.S. Dist. LEXIS 51446, in which the District Court said:

> As the Second Circuit's traditional understanding of *Wilko* and §10—that *Wilko* endorsed manifest disregard and that §10 grounds are not exclusive—is inconsistent with the basis for the holding *Hall Street*, the Court finds that the manifest disregard of the law standard is no longer good law.

With all due respect, Judge Howell decision has no basis in Second Circuit precedent.

It is true that the Supreme Court held that the grounds for vacation and modification provided by §§ 10 and 11 of the FAA are "exclusive." The Court stated, "We agree with the Ninth Circuit that they are, but vacate and remand for consideration of independent issues." *Hall Street*, 128 S. Ct. 1396, 1408 (2008).

The Supreme Court noted that the Second Circuit, as well as some other courts, had read the "manifest disregard" mentioned in passing in *Wilko* as "a further ground of *vacatur* on top of those listed in §10." *Id.* at 1403. The sentence referred in *Wilko* read:

> [T]he interpretation of the law by arbitrators in contrast to manifest disregard [of the law] are not subject, in the federal courts, to judicial review for error interpretation. 346 U.S. 427, 436-437. (Emphasis added).

9

The high court said that, "Hall Street sees this supposed addition to §10 as the camel's nose: If judges can add grounds to vacate (or modify) so can contracting parties." *Hall Street*, 128 S. Ct. at 1403. The majority noted the phrasing was vague, and maybe the term "manifest disregard" was meant to name a new ground for review, but "maybe it just referred to §10 grounds collectively." *Id.* at 1404. This would include §10(a)(3)'s "misconduct" or "any other misbehavior by which the rights of any party have been prejudiced" or §10(a)(4) is "exceeded their powers, or so imperfectly executed them that a mutual find and definite award...was not made."

*Hall Street* held only that the FAA grounds for *vacatur* are exclusive and private parties cannot contract to expand them to include non-egregious errors of law. *Id.* at 1407. The Supreme Court recognized that many courts had read *Wilko* as adding "manifest disregard" as a separate ground applicable to FAA case. *Id.* at 1403. The Court decided nothing about other possible avenues for judicial enforcement. In fact, because the arbitration agreement in *Hall Street* was reached during the course of litigation and with the trial judge's apparent blessing, the question raised was whether the agreement to treat errors of law as a ground "should be treated as an exercise of the District Court's authority to manage its cases" under Fed. R. Civ. P. 16. *Id.* at 1407. Obviously, the Supreme Court was prepared to give trial judges leeway in trying to dispose of cases.

Therefore, "manifest disregard" is alive and well, at a minimum, if it means the sort of objectionable conduct referred to in FAA § 10(a)(3) or (4). CSX maintains that the majority of the panel in the subject Award exceeded (1) their powers under 9 U.S.C. § 10(a)(4) by imposing all of COGSA and its burdens of proof on CSX, thereby elevating its status to one of "common" carrier; (2) that the majority "imperfectly executed "its powers under 9 U.S.C. § 10(a)(4) by failing to make a finding as to causation for the loss; and (3) engaged in "misbehavior" under 9

U.S.C. § 10(a)(3) by failing to discuss how it reached the conclusion that the additional duties of "loading" "stowage" and "discharge" are to be read into Article 7.1 of the Space Charter when they are not even mentioned. CSX respectfully submits that these same acts are all tantamount to "manifest disregard".

## CONCLUSION

Regardless of the label applied, if there is such a thing as justice and equity, then arbitrators should not be allowed to re-write a contract so as to impose new duties upon a party, thereby elevating that party to a legal status of greater responsibility, which is contrary to the very terms of the contract which specifically avoided that elevated status, and do all of this without giving an explanation as to how they reached their conclusion.

CSX Lines respectfully requests that its Petition to Vacate the Award of January 30, 2008 be granted, and the Award be set aside.

Dated: New York, New York
       July 18, 2008

                                    Respectfully submitted,

                                    **DeORCHIS & PARTNERS, LLP**
                                    Attorneys for Petitioner, CSX Lines, LLC

                                    By: [signature]
                                    Vincent M. De Orchis, Esq. (VMD-6515)
                                    61 Broadway, 26th Floor
                                    New York, New York 10006-2802
                                    (212) 344-4700
                                    Our File: 2073-12

John A. Orzel, Esq. (JO-2420)
M.E. De Orchis, Esq. (MD-3194)
Justin Waytowich, Esq.
    -of Counsel-
DeOrchis & Partners, LLP

TO:   Freehill Hogan & Maher (LLP)
      Attorney for Respondent, Maersk-Sealand

12